**In re Sean CORCORAN.**

**Appeal No. 80–578.**

United States Court of Customs and Patent Appeals.

Feb. 12, 1981.

Farrell R. Werbow, Thomas J. D'Amico, Arlington, Va., for appellant.

Joseph F. Nakamura, Sol., Patent & Trademark Office, Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection of claims 16–25 under 35 U.S.C. § 103, and also, under 37 CFR 1.196(b), rejecting claim 21 under 35 U.S.C. § 112, second paragraph, and claims 16–25 under both 35 U.S.C. § 102(b) and 35 U.S.C. § 102(b) combined with 103, in application serial No. 685,888, filed May 12, 1976, for "Sheeting of Plastics Material for the Manufacture of Strip-like Articles Such As Roller Blinds and Curtains, and Apparatus for Preparing Same," a continuation of application serial No. 479,-133, filed June 13, 1974. We affirm.

*The Invention*

Appellant has disclosed a selectable-width roller blind or curtain comprising a flexible plastic sheet such as polyvinyl chloride (PVC) 0.008 inch thick attached to a horizontal support means such as a roller. A series of peelable strips is formed along one or both of the vertical edges of the sheet by slitting it part way through. Allegedly, the consumer can easily narrow the sheet width to fit a window by tearing away the number of strips roughly equivalent to the perceived excess.

A stated novel feature in the present blind is the forming of the peelable strips by slits cut into but not through the sheet without substantially deforming or laterally displacing the plastic material. In the preferred embodiment, these slits are substantially invisible. The criticality of the preferred cuts is defined in claim 24 as no deeper than half and no shallower than one-twelfth of the sheet thickness and of a width not exceeding one-thousandth of an inch. Separation of a strip formed in the above manner supposedly results in a clean edge which has not been distorted.

Additional embodiments disclose the use of features designed to simplify the task of installing the blind. For example, the invisible slits or edges of the removable strips can be more readily located with the aid of indicator means such as tabs formed by cutting the material all the way through at

one or both ends of the shade unit. By grasping the desired tab, the desired amount of shade material can be torn off. The wooden roller will, of course, be cut down to match.

### The Board

In addition to affirming the examiner's rejection under 35 U.S.C. § 103, the board made three new rejections.

(1) Dependent claim 21 was rejected under 35 U.S.C. § 112, second paragraph, as "indefinite." Specifically, claim 20, from which claim 21 depends, uses the expression "indicator means." Since the "tabs" of claim 21 were stated to be the only such disclosed means, the board held that dependent claim 21 did not further restrict or substantially differ from claim 20, citing 37 CFR 1.75(b) and (c).

(2) The board rejected claims 16–25 under 35 U.S.C. § 102(b) by reason of an "on-sale" bar. The following "Bulletin notice" of record, published in the United States June 19, 1972, was held by the board to clearly establish an offer of sale more than one year prior to appellant's parent application filing date of June 13, 1974:

> * * * Manufacturer, inventor—offers "patent rights or *supplies of P.V.C. window shades invisibly pre-slit to peel by hand to exact window widths*; each stock size fits up to 50 different windows to ⅛"—range includes plain colours & florals" bank ref. [Emphasis ours.]

Additional proof of an offer of sale was found by the board in correspondence between appellant and the Nesa International Corporation dated September 4, 1972. An enclosure accompanying this letter was said to set forth details about peelable window shades, and included both a sample and a price listing for the shades "F.O.B. Dublin."

Viewing these documents together, the board concluded that a commercially marketable, peelable shade was offered for sale in this country prior to the critical date of June 13, 1973. The "on-sale" provision of § 102(b) was held applicable. However, in ending this part of its opinion, the board noted that only peelable sheeting was offered in the notice. The difference between the claimed combinations of "support means" and sheeting or "a roller" and sheeting and the sheeting alone was dismissed as being "obvious within the purview of 35 U.S.C. 103." The board said, "Reduction to practice would require no more than the act of tacking the plastic sheeting material to a conventional roller."

(3) The board rejected claims 16–25 under 35 U.S.C. § 102(b)/103 for obviousness, treating the World Trade Bulletin notice, supra, as a "printed publication" under § 102(b). The board said:

> * * * we are persuaded that one of ordinary skill in the art would readily understand how to make and use the invisibly pre-slit P.V.C. window shades described in the Bulletin. In our view, the disclosure in the Bulletin of "P.V.C. window shades" *embodies the claimed combination of sheeting and support means, i. e., roller.* In any event, complete readability of the thing disclosed on the claims [1] is not a prerequisite because *a publication within the sense of Section 102(b) becomes part of the prior art* over which the claims must be patentable. *In re Foster*, 52 CCPA 1808, 343 F.2d 980, 145 USPQ 166 (1965). The ordinary mechanic in this art would readily recognize the need for horizontal support means in order for the window shade to be operable in its intended environment. Any differences between the claimed invention and the disclosed "P.V.C. window shades invisibly pre-slit to peel by hand" would be of such a nature as to have been obvious to a person reasonably skilled in the art. [Emphasis ours.]

### OPINION

The determinative issue before us is whether, on the facts of record, appellant

---

1. We read this as intending to say readability of the claims on the thing disclosed. A "thing" cannot be read; only words can be read.

has lost his right to a U.S. patent by reason of the one-year time bar of § 102(b) coupled with the non-obviousness provision of § 103 under the principles of law enunciated in *In re Foster*, supra, relied on by the board.

The fundamental principle which we discussed and applied in *Foster* is that an inventor is given a grace period of one year, within which to file his patent application in this country, after the occurrence of the events named in 35 U.S.C. § 102(b), which events are such as to make the invention claimed in the application available to the public in this country. Furthermore, as held in *Foster*, the principle, which is intended to prevent dilatory filing, applies not only to the precise matter disclosed by the events of § 102(b) but also to claimed inventions which would be obvious from the matter disclosed by the events in the sense of § 103, to those of ordinary skill in the art as of a date one year prior to the filing of the U.S. application.

The principle of *Foster*, which may be called a §§ 102(b)/103 rejection since it finds its statutory base in both of those sections, has been accepted in a number of judicial circuits including the courts of appeal of the Second,[2] Third,[3] Seventh,[4] and Ninth [5] Circuits.

Section 102(b) reads in its entirety:

A person shall be entitled to a patent unless—

&ast; &ast; &ast; &ast; &ast; &ast;

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States &ast; &ast; &ast;.

It is the "on sale" provision which is most pertinent here. The World Trade Bulletin notice, supra, published more than one year before the filing date of appellant's parent application, expressly offered "supplies of P.V.C. window shades invisibly pre-slit to peel by hand to exact window widths." These were the window shades which appellant was commercially making and selling in Ireland. A window shade is something to be hung before a window and implies some kind of support. It is well known, and we can judicially notice, that curtain rods extending horizontally and spring shade rollers are the commonest supports for window shades. One of ordinary skill in the window shade art would immediately recognize the necessity of such a support for use in conjunction with the window shades which appellant offered to "supply" to the American market.

The Second Circuit Court of Appeals dealt with a similar "on sale" situation in *Timely Products*, note 2 supra. That case differed somewhat from this one in that the offer of sale which was accepted by the giving of an order was based on the display of samples, the patentee arguing that the articles alleged to be "on sale" did not come within § 102(b) because they were "not actually available for delivery until after the critical date." After reviewing the law extensively, the court stated its conclusions as follows (523 F.2d at 302, 187 USPQ at 267–68):

> We accordingly conclude that Section 102(b) bars an application for patent filed more than one year after the solicitation of an order for a specific article to be produced later, where the following requisites are present:
>
> (1) The complete invention claimed must have been embodied in or obvious in. view of the thing offered for sale. *Frantz Mfg. Co. v. Phenix Mfg. Co.*, 457 F.2d 314, 320–21 [173 USPQ 266, 270–271] (7th Cir. 1972); *Tool Research & Engineering Co. v. Honcor Corp.*, 367 F.2d 449, 454 [151 USPQ 236, 241–242] (9th Cir.

**2.** *Timely Products Corp. v. Arron*, 523 F.2d 288, 187 USPQ 257 (2d Cir. 1975); *Struthers Scientific & International Corp. v. Rappl & Hoenig Co.*, 453 F.2d 250, 172 USPQ 257 (2d Cir. 1972).

**3.** *Package Devices, Inc. v. Sun Ray Drug Co.*, 432 F.2d 272, 167 USPQ 193 (3d Cir. 1970).

**4.** *Frantz Mfg. Co. v. Phenix Mfg. Co.*, 457 F.2d 314, 173 USPQ 266 (7th Cir. 1972).

**5.** *Tool Research & Engineering Corp. v. Honcor Corp.*, 367 F.2d 449, 151 USPQ 236 (9th Cir. 1966).

1966), *cert. denied*, 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972 [153 USPQ 888], *reh. denied*, 389 U.S. 893, 88 S.Ct. 17, 19 L.Ed.2d 203 (1967). Complete readability of the claim on the thing offered is not required because whatever is published (or on sale) more than one year prior to the filing of a patent application becomes part of the prior art over which the claim must be patentable. *Application of Foster*, 343 F.2d 980, 52 C.C.P.A. 1808 [145 USPQ 166] (1965), *cert. denied*, 383 U.S. 966, 86 S.Ct. 1270, 16 L.Ed.2d 307 [149 USPQ 906], *reh. denied*, 384 U.S. 934, 86 S.Ct. 1441, 16 L.Ed.2d 535 (1966).

(2) The invention must have been tested sufficiently to verify that it is operable and commercially marketable. This is simply another way of expressing the principle that an invention cannot be offered for sale until it is completed, which requires not merely its conception but its reduction to practice. *Hobbs v. U. S. Atomic Energy Commission*, 415 F.2d 849, 859 [171 USPQ 713, 719–720] (5th Cir. 1971).

(3) Finally, the sale must be primarily for profit rather than for experimental purposes. *In re Yarn Processing Patent Validity Litigation*, 498 F.2d 271, 277 [183 USPQ 65, 68–69] (5th Cir. 1974), *cert. denied*, 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1975). See also *Dart Industries, Inc. v. E. I. duPont de Nemours & Co., supra*, 489 F.2d at 1366 [179 USPQ at 397].

We agree with these principles. Appellant attempts to escape their application primarily by referring to two differences between the inventions of the appealed claims and the pre-slit shade material he offered to supply and thus put "on sale." The first difference is that most of his claims call for a horizontal support or, more specifically, a roller. The second is that three of the claims call for an "indicator means" or, more specifically, a tab, which is a small segment of shade material at a top or bottom end of a shade, lying between two slits. It is formed simply by extending the slit all the way through the material for a short distance so that the user can find the slits. The tab also gives him a piece of material to take hold of to start the peeling operation.

In accordance with the *Foster* principles that the obviousness of the claimed invention as a whole must be considered and that in doing so the article placed on sale must be treated as technical "prior art" under § 103, we must decide whether the differences in the claims, namely, the supports or the tabs, make the claimed invention unobvious.

As to the support means we conclude that, given the plastic sheet shade material denominated a "window shade," nothing could be more obvious than to attach it to a roller or other support.

As to the tabs, sometimes denominated "indicator means * * * for initiating peeling," we likewise consider it would have been obvious as of the critical date to render visible the invisible slits extending partially through the PVC material, at the same time producing "tabs" by extending the slits all the way through the material at one or both ends of the shade units.

For these reasons, the board's rejection of all claims under §§ 102(b)/103 is affirmed. We do not find it necessary to reach the other rejections.

AFFIRMED.