In re Albert H. **BRIGANCE**.

Appeal No. 85–2561.

United States Court of Appeals, Federal Circuit.

June 4, 1986.

Charles Hieken, Boston, Mass., argued, for appellant.

John W. Dewhirst, Associate Solicitor, Office of the Solicitor, U.S. Patent and Trademark Office, Arlington, Va., argued, for appellee. With him, on brief, were Joseph F. Nakamura, Solicitor and Fred E. McKelvey, Deputy Solicitor.

Before DAVIS, SMITH, and NEWMAN, Circuit Judges.

EDWARD S. SMITH, Circuit Judge.

In this patent case, the United States Patent and Trademark Office (PTO) Board of Patent Appeals and Interferences (board) sustained the patent examiner's rejection under 35 U.S.C. § 102(b) of claims 1, 3–5, and 7 in application serial No. 799,500 by Albert H. Brigance (Brigance). We affirm.

## Issue

The principal issue before this court is whether the board erred in affirming the examiner's rejection of claims 1, 3–5, and 7 of the Brigance application on the ground that the claimed subject matter was on sale, within the meaning of section 102(b), more than 1 year prior to the filing date of the application.

## Background

On May 23, 1977, Brigance filed a patent application claiming an apparatus and a method for evaluating and recording student skill levels.[1] The invention, labeled as the "Brigance Diagnostic Inventory of Basic Skills" (Inventory), was designed to be used both in connection with the development of educational programs for individual students having special needs and with the evaluation of the progress of each student while participating in the respective program. The stated objective of the Inventory was to improve methods and means for evaluating student skills while simplifying and integrating evaluation, diagnostic record keeping, and objective setting procedures. The subject matter described in the specification comprises an apparatus and technique for evaluating basic skills of students, a setting objectives feature used to develop viable objectives for improving the skills of each student during the period following evaluation, and a means for recording a succession of evaluations in a convenient manner to display the progress of each individual evaluated. Of the claims set forth by the patent application, only claim 8 covered the setting

1. Claims 1 and 5, representative of the appealed claims, read as follows:

"1. Apparatus for evaluating skills comprising,

"a plurality of pairs of opposed facing pages in a single volume formed with information aligned in rows generally parallel to the adjacent edges of the opposed pages with each pair of opposed pages including an examiner page arranged to be normally readable by the examiner when facing the person being evaluated and a student page being normally readily observable by the person being evaluated when facing the examiner,

"said examiner page including instructions for the examiner,

"and means for recording the results of each evaluation,

"said means for recording including a student record book having a list of acceptable responses,

"and marking means for marking the acceptable responses provided by a person evaluated,

"said marking means comprising marking devices of predetermined different colors for recording the results of an evaluation at a particular time in a predetermined one of said colors,

"said recording means having spaces for receiving marking in a plurality of said colors with each color designating the results in the same record book of the acceptable responses provided by the same person being evaluated at spaced time intervals to provide a readily observable record of the progress of the person being evaluated over said spaced time intervals.

"5. A method of evaluating skills with the apparatus of claim 1 which method includes the steps of arranging a pair of opposed facing pages between a person being examined and the examiner so that the examiner page is readily readable by the examiner and the student page is readily observable by the person being evaluated,

"stating instructions on the examiner page to the student being examined,

"listening to the response given by the person being evaluated following said instructions,

"recording said responses on said means for recording,

"and repeating the preceding steps at a later date to provide on said means for recording a record of the progress of the person being evaluated between successive evaluations,

"said recording steps including marking the acceptable responses in each evaluation with said marking means in a different color to provide in said student record book a clearly observable record of the progress of the person being evaluated over the period of successive evaluations."

objectives feature described in the specification.[2]

The examiner finally rejected claims 1, 4, 5, 7, and 8 under 35 U.S.C. § 103 as obvious in view of prior art. On March 31, 1981, the board reversed his rejection under section 103 and issued a new rejection under 37 C.F.R. § 1.196(b) under section 102(b)[3] based on the existence of a typewritten version of the Inventory and the offer of the Inventory for sale more than 1 year before the application filing date of May 23, 1977.

Brigance elected to resume prosecution before the examiner, resulting in the rejection of claims 1, 3–5, 7, and 8 under section 102(b). The examiner's rejection, like the previous board decision of March 31, 1981, was based upon the acts, performed by Brigance along with his assignee, Curriculum Associates, Inc., of both reducing the invention to practice and placing the invention on sale prior to the critical date. On February 28, 1983, the board sustained the examiner's rejection of claims 1, 3–5, and 7 under section 102(b); however, a new ground was asserted for rejecting claim 8. The board, determining that claim 8 was an obvious modification of the embodiments described by claims 1, 3–5, and 7 which claims were barred pursuant to section 102(b), rejected claim 8 under the combination 35 U.S.C. §§ 102(b)/103. Brigance again elected remand to the examiner.

Further prosecution before the patent examiner resulted in the rejection of claims 1, 3–5, and 7 under section 102(b) and of claim 8 under sections 102(b)/103. On January 11, 1985, the board affirmed the examiner's rejection of claims 1, 3–5, and 7. However, after re-evaluating the entire patent prosecution file history, in view of supplemental declarations submitted by Brigance, the board reversed the examiner's rejection of claim 8. The board, in allowing claim 8, concluded that the specific physical placement of the setting objectives feature, a component of the embodiment covered only by claim 8, could be relied upon as an unobvious distinction from the embodiments, claimed in claims 1, 3–5, and 7, barred under section 102(b). We are concerned only with the board's rejection of claims 1, 3–5, and 7 and not with either claim 8 or any feature of the embodiment described therein.

The board sustained the examiner's rejection of claims 1, 3–5, and 7 after determining that Brigance and Curriculum Associates both reduced the invention to practice and offered the invention for sale, more than 1 year prior to filing the patent application. Reduction to practice, found to have occurred sometime during 1974 or 1975, was based upon a combination of events. First, Brigance prepared a typewritten copy of the Inventory in 1974 and later submitted the manuscript to the United States Copyright Office for registration in 1975. Second, in November 1975, Curriculum Associates placed a model of the Inventory on exhibit at the National Counsel of Teachers of English (NCTE) convention in San Diego, California. A memorandum, prepared by Curriculum Associates and attached to a brochure distributed at the convention, touted the model displayed

---

2. Claim 8, not on appeal, reads as follows:

"8. Apparatus for evaluating skills comprising,

"a plurality of pairs of opposed facing pages in a single volume formed with information aligned in rows generally parallel to the adjacent edges of the opposed pages with each pair of opposed pages including an examiner page arranged to be normally readable by the examiner when facing the person being evaluated and a student page being normally readily observable by the person being evaluated when facing the examiner,

"said examiner page including instructions for the examiner and an objective for the examiner setting forth in words a specific objective to be met in the future by the person being evaluated on the subject matter of the skill associated with that page and including a blank portion for association with a specific numerical range as a future objective for the person then being evaluated."

3. Section 102(b) reads in relevant part:

"A person shall be entitled to a patent unless—

\* \* \* \* \* \*

"(b) the invention was \* \* \* in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States \* \* \* [.]"

at the convention as being either the fourth or fifth version that "was field tested and evaluated by a wide range of teachers in Northern California." Third, during the February 28, 1983, oral hearing before the board, counsel for Brigance and Curriculum Associates conceded that a model of the Inventory existed prior to the critical date, albeit in a typewritten form. Finally, the patent prosecution file history revealed that 2,500 reproductions of the typewritten copy of the Inventory were prepared prior to the critical date by Curriculum Associates. Based upon the totality of the evidence before it, the board concluded that, prior to the critical date, the Inventory was in a completed form that was satisfactory to the inventor.

The board relied on a copy of a brochure, distributed by Curriculum Associates prior to the critical date, on which to base its conclusion that the Inventory was offered for sale prior to the critical date. Specifically, the brochure offered the Inventory, as embodied in claims 1, 3–5, and 7, for sale at a discount rate if ordered prior to December 31, 1975. The board, having found both a complete reduction to practice of the Inventory and an offer to sell the Inventory prior to the critical date, concluded that the subject matter of claims 1, 3–5, and 7 was on sale, within the meaning of section 102(b), more than 1 year prior to the patent application filing date.

### Analysis

■ The PTO met its initial burden of going forward by establishing a prima facie case that the subject matter covered by claims 1, 3–5, and 7 was on sale, within the meaning of section 102(b), prior to the critical date.[4] Curriculum Associates' preparation and subsequent exhibition of a typewritten copy of the Inventory at the NCTE convention, distribution of memoranda stat-

ing that the Inventory had been field tested and evaluated, and production of 2,500 copies of the Inventory, all of which occurred prior to the critical date, support the board's conclusion that the Inventory was satisfactory to the inventor and that reduction to practice had occurred. Curriculum Associates' distribution of a brochure, prior to the critical date, which brochure offered the Inventory for sale at a discount rate if ordered prior to December 31, 1975, is sufficient grounds for a finding that an offer was made, prior to the critical date, to sell the Inventory. Because an offer to sell a completed invention is sufficient to support a rejection under section 102(b),[5] we hold the board's conclusion, that the embodiment of the Inventory covered by claims 1, 3–5, and 7 was on sale prior to the critical date, is supported by the record.

In its attempt to rebut the PTO's prima facie case, Brigance asserts that the Inventory was not on sale, within the meaning of section 102(b), prior to the critical date. Brigance contends that the Inventory could not have been on sale because (1) the Inventory was not tested sufficiently to verify that it was operable and commercially marketable, and (2) the offers for sale were made not for profit, but were made solely for experimental purposes. Based on these contentions, Brigance urges us to hold that the board's determination, sustaining the examiner's rejection of claims 1, 3–5, and 7, was erroneous. After examining the totality of the circumstances surrounding Curriculum Associates' offers for sale of the Inventory, we must conclude that the board's findings are not clearly erroneous or in error as a matter of law.

■ This court has repeatedly recognized, when reviewing issues arising under the public use or on sale bar of section 102(b), that these issues must be determined by considering the totality of the

---

4. *In re Caveney,* 761 F.2d 671, 674–75, 226 USPQ 1, 3 (Fed.Cir.1985); *In re Johnson,* 747 F.2d 1456, 1460, 223 USPQ 1260, 1263 (Fed.Cir.1984).

5. *Caveney,* 761 F.2d at 675, 226 USPQ at 3; *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1150, 219 USPQ 13, 18 (Fed.Cir.1983); *In*

circumstances.[6] Factors we have considered include: the length of the test period; whether any payment was made for the invention; whether there is any secrecy obligation on the part of the user; whether progress records were kept; whether persons other than the inventor conducted the asserted experiments; how many tests were conducted; and how long the test period was in relation to test periods of similar devices.[7] This list of factors is by no means all inclusive, but merely serves as a basis for objective analysis under section 102(b).

■ Brigance argues that the Inventory was not reduced to practice prior to the critical date and therefore the board's reliance on section 102(b) is erroneous. Brigance contends the embodiment of the Inventory, covered by claims 1, 3–5, and 7, was not tested sufficiently to verify that it was operable for its intended purpose of evaluating student skills and of setting objectives when administered by educational professionals. This assertion, aimed at rebutting the PTO's prima facie case, clearly falls short of its goal. While objective indicia are valuable in determining whether the inventor's use of his invention is experimental, the inventor's expression of his subjective intent to experiment is, without more, of little value, particularly if expressed after initiation of litigation.[8] A close, objective look at the combination of events occurring prior to the critical date leaves little room for doubt that Brigance and Curriculum Associates believed the Inventory, as embodied by the rejected claims, was complete and was reduced to practice prior to the critical date.

At oral argument, Brigance contended the distributed brochures and memoranda could not create a prima facie case of reduction to practice. Brigance reasoned, because Curriculum Associates was not completely satisfied that the Inventory's features described in the brochures and memoranda were functional for their intended use and purpose, that the Inventory was not complete and reduction to practice had not occurred. We view this attempt to rebut the PTO's prima facie case as unpersuasive. Although the brochures and memoranda, when viewed in isolation, may not establish a prima facie case of reduction to practice, the precritical date distribution of the brochures and memoranda in view of the precritical date preparation of 2,500 copies of the typewritten Inventory creates a prima facie case which was not rebutted.

■ While experimental use of an invention prior to the critical date is not a bar,[9] a review of the cases reveals that the underlying experimental purposes were clearly supported by objective evidence in the record. Curriculum Associates has not met its burden of showing that the board erred in not finding that the 2,500 typewritten copies were intended for experimental purposes, rather than for commercial marketing purposes.

■ Brigance further argues that, because the Inventory is not commercially

re Theis, 610 F.2d 786, 791, 204 USPQ 188, 192–93 (CCPA 1979).

6. Hycor Corp. v. Schlueter Co., 740 F.2d 1529, 1535, 222 USPQ 553, 557 (Fed.Cir.1984); TP Laboratories, Inc. v. Professional Positioners, Inc., 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.1984).

7. Hycor, 740 F.2d at 1535, 222 USPQ at 557.

8. TP Laboratories, 724 F.2d at 972, 220 USPQ at 583; In re Smith, 714 F.2d 1127, 1135, 218 USPQ 976, 983 (Fed.Cir.1983).

9. See generally Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 225 USPQ 634 (Fed.Cir.1985) (concluding that the require-

ments for the section 102(b) statutory "on sale" bar were not satisfied by the inventors' precritical date experimentation); TP Laboratories, 724 F.2d 965, 220 USPQ 577 (holding that an inventor's precritical date experimental use of his dental appliance invention on three orthodontic patients was not a bar under section 102(b)); Great N. Corp. v. Davis Core & Pad Co., 782 F.2d 159, 228 USPQ 356 (Fed.Cir.1986) (affirming the lower court's finding that precritical date production and tests of molded expanded polystyrene foam supports did not bar patentability of claimed supports where all of the tests conducted before the critical date had resulted in cracked supports and were failures).

useful without the setting objectives feature which was not reduced to practice until after the critical date, the board erred in finding that the Inventory was commercially useful and was reduced to practice prior to the critical date. This contention misses the point of the section 102(b) bar. Even assuming arguendo that the Inventory was not commercially successful until after the setting objectives feature was reduced to practice, claims 1, 3–5, and 7 cover only the material that was offered for sale before the critical date. This court and its predecessors have stated that the experimental use exception does not apply to experiments performed with respect to nonclaimed features of an invention.[10] Since the setting objectives feature is embodied solely by claim 8, and not by rejected claims 1, 3–5, and 7, whatever further testing and experimentation was contemplated did not relate to any of the features set forth in the rejected claims.

 Finally, Brigance contends that Curriculum Associates' precritical date offerings of the Inventory for sale were made not primarily for profit, but were made solely for experimental purposes. Brigance, relying on *Timely Products Corp. v. Arron*,[11] asserts that the precritical date sale offers were made for determining the commercial marketability of the Inventory, and that reduction to practice could not have occurred until after actual sales were made. The rationale underlying this assertion is that the Inventory would not be demonstrated as commercially marketable until educators displayed their satisfaction with the Inventory by submitting repeat orders in bulk. Since the potential bulk copies of the Inventory had not even been printed, appellant argues that they were not "on hand" as required by *Timely Products*. We do not agree with this interpretation of *Timely Products*. In this case, a

fully marketable embodiment of the claimed invention existed, and was placed on sale prior to the critical date.[12]

### Conclusion

In summary, we affirm the board's determination, sustaining the patent examiner's rejection pursuant to section 102(b) of claims 1, 3–5, and 7 of Brigance application No. 799,500. Appellant's motion, filed November 25, 1985, to strike a portion of the brief for the Commissioner of Patents and Trademarks, is denied.

AFFIRMED.

---

10. *Smith,* 714 F.2d at 1135–36, 218 USPQ at 984; *Theis,* 610 F.2d at 793, 204 USPQ at 193–94.

11. *Timely Prods. Corp. v. Arron,* 523 F.2d 288, 187 USPQ 257 (2d Cir.1975). Although this court has previously expressed that it does not adopt the *Timely Products* test as the answer in all section 102(b) determinations, *Barmag*

*Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 837, 221 USPQ 561, 565 (Fed.Cir.1984), we need not reach this issue here.

12. *J.A. LaPorte, Inc. v. Norfolk Dredging Co.,* 787 F.2d 1577, 229 USPQ 435 (Fed.Cir.1986).