*658 EDWARD S. SMITH, Circuit Judge,
dissenting.
This panel majority opinion ignores the issues raised in these cross-appeals, and which were decided in the Claims Court, in order to frame its own question whether a reduction to practice should be required for application of the on-sale bar provided in section 102(b). It then proceeds to answer its own question in the negative. The trial judge and all parties herein had proceeded, as have countless parties and judges before them, on the premise that reduction to practice is so required. The Claims Court held that under such precedent law of this circuit, there was a reduction to practice, but that for other reasons the on-sale bar did not apply and the '513 patent was not invalid under section 102(b). The Claims Court also held that the ’513 patent was not invalid for obviousness under section 103. Finally, the Claims Court held that the charge of infringement would not prevail because the Government did not make use of the device covered by appellant’s ’513 patent.
The panel majority does not even reach the issues of infringement and obviousness, presented at length by the parties. Having strained the issues that are on appeal into a form of issue neither raised nor briefed by the parties, the panel majority then interprets prior cases in this court and its predecessor courts as only “appearing” to assume the requirement of reduction to practice but not having “specifically,” or “explicitly,” or “squarely” addressed the question the panel majority itself raised sua sponte. Voila! Two judges of the court are now free to disembody a fundamental principle of patent law which a respectable body of precedent holds to exist.
Why must we do this in this way? Is our ruling in South Corporation v. United States[1] mere window-dressing? Is a representation that the case law of other courts is not uniform a valid reason to support our squeezing around South Corporation, an opinion that does not concern “other” courts?
In light of the panel majority opinion, the questions being decided today are in reality whether a 3-judge panel is bound by our own precedent, and whether the precedent jurisprudence of this court requires a reduction to practice by the critical date. The answer to both questions is “yes.”
STARE DECISIS
The objective of the South Corporation holding is disserved by strained and unnecessary interpretations in lieu of in banc action.
Since South Corporation was decided, that case has; frequently received its 1-line citation and 1-sentence description as having adopted the jurisprudence of our predecessor courts, which jurisprudence can not be overruled except by the court sitting in banc. We may not yet have arrived where it should be necessary to repeat in full the opinion of South Corporation in a footnote or appendix so that its significance will be conveniently remembered, but it is appropriate at this point to recall that decision more fully in order to emphasize its real force and effect.
On the merits, South Corporation involved in part the imposition of a duty on foreign repairs costing $98.40 to the motor vessel “North Seal.” A minimum of perspicacity is required to observe that the principle of stare decisis in this court is in much greater danger of slipping beneath the waters as a result of this panel majority opinion than was the good ship North Seal. Once before I protested that our precedent, even if ready for change, was being allowed to slip silently into the backwaters of the law simply by ignoring it.[2] It is not important whether the present disposition is in fact only the second time that stare decisis is being allowed to go down, for it is clear that if it does, the importance of South Corporation will be submerged permanently without the neces *659 sity of waiting for the traditional third time under.
Procedurally, South Corporation deals with the importance which attaches to stability of the law, with which everyone, including the majority, agrees. That opinion contains language which all of us should recall from time to time. Especially the words of the Supreme Court, quoted therein, should be remembered:[3]
Very weighty considerations underlie the principle that courts should not lightly overrule past decisions. Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.
Our past decisions consistently have held, as a threshold requirement for the section 102(b) on-sale bar, that a device must be in existence and shown to work for its intended purpose (the classical definition of reduction to practice) before the on-sale bar can apply.[4] The panel majority does not seriously dispute that this has been the law of the circuit, the law of our predecessor courts, and the law of the land, for 150 years. Today, the panel majority ignores the significance of decades of discussion of “reduction to practice” as if it does not exist, and eliminates the reduction to practice requirement for the on-sale bar.
Of course the 2-judge majority does not overrule this court’s precedent. At best it can muddy the water for similar fact situations.
SECTION 102(b) AND THE ’513 PATENT
There is clear precedent that the on-sale bar requires, 1 year prior to the filing of a patent application: (1) the complete invention claimed must be embodied in or obvious in view of the thing offered for sale; (2) the thing offered for- sale must be reduced to practice; and (3) there must be a definite sale or offer for sale, primarily for profit rather than for experimental purposes.[5]
The panel majority correctly holds that the thing offered for sale by UMC was not reduced to practice by the critical date. That should be the end of the inquiry. The law is clear, and the parties agree, that the on-sale bar cannot be invoked without a reduction to practice. The panel majority, however, without being asked by the parties, asks whether reduction to practice “should” be required for the on-sale bar, and concludes that there should be no such requirement, notwithstanding the binding precedent to the contrary.
HISTORY OF SECTION 102(b)
Section 102(b)[6] is in the nature of a statute of limitations, enacted to implement the policy that those who seek the benefits of the patent grant must act promptly after the invention has been placed in possession of the public. Failure to act within 1 year forfeits the opportunity to obtain a patent.
As in statutes of limitation generally, the start of a statutory bar must be reasonably clear at the time it occurs. Although statutes of limitation are inflexible, courts have *660 hesitated to include in their measure time during when the claimant did not know, or have reason to know, that the cause was accruing.[7] The long history of section 102(b), which effects the irretrievable loss of a valuable right, shows judicial and congressional recognition of this need for reasonable certainty.[8]
It was never the purpose of section 102(b) to force premature entry into the patent system upon inventors who are still developing their inventions. The public interest is not served by a system that wastes the resources of inventors:[9]
an inventor may wait * * * until he learns whether his invention is of enough value to justify an application for a patent * * * [and] may test it, not only to put it into definitive form, but to see whether his ideas are worth exploiting[,]
or by “the waste of Patent Office resources in processing halfbaked inventions.” [10]
The variety of situations which have arisen under section 102(b) required early judicial attention, from which evolved the present minimum standard. Courts had early turned to the interference concept of reduction to practice[11] as a threshold condition in determinations of public use or sale. Courts drew a pragmatic line whereby an invention that was still merely a conception or idea would not be barred by section 102(b) before the invention had been “made” in the patent sense.
Reduction to practice was thus recognized as a minimum legal standard:[12]
The concept that an invention must be operable and reduced to practice before it can be deemed “on sale” * * * is rooted in scientific reality and simple common sense * * *.
This requirement for an operable invention is in tune with the purpose of the patent system to encourage and patent useful inventions, not bare ideas.
Even after an invention was reduced to practice in the interference sense, courts recognized that the invention still may not have reached the stage at which a section 102(b) bar could fairly attach: “The work of the inventor must be finished, physically as well as mentally. Nothing must be left for the inventive genius of the public * * *."[13] The invention must be placed “into the hands of the public in a condition for immediate use, requiring no further *661 speculation or experiment * * * for the accomplishment of its intended ends.”[14]
Constant throughout this history is the minimum requirement that a device be shown to work for its intended purpose before the bar starts to run. All of this precedent describes reduction to practice as a minimum requirement, not as a superfluous one. Any change should be well considered. Such change cannot be effected by treating the requirement as if it has never existed.
SECTIONS 102(b)/103
I agree with the panel majority that, for purposes of sections 102(b)/103, it is not required that the claimed invention must be reduced to practice and offered for sale. It is sufficient that the claimed invention “must have been embodied in or obvious in view of the thing offered for sale.” [15] (Emphasis supplied.) “Complete readability of the claim on the thing offered is not required because whatever is published (or on sale) more than one year prior to the filing of a patent application becomes part of the prior art over which the claim must be patentable.”[16] In applying sections 102(b)/103, it is the “thing offered” which must have been reduced to practice, that is, one of the “things” must have been completed or built and shown to work, prior to the critical date.[17]
In In re Corcoran,[18] the CCPA had no difficulty in applying the sections 102(b)/103 bar to the claimed invention of a pre-slit window shade material with tabs and mounted on a roller. The thing offered for sale was only the pre-slit window shade material, without the tabs or roller. Thus, the patent claims did not read on the thing offered for sale. The offer was accompanied by actual samples of the material, which the CCPA held to be in “commer-dally marketable” form, i.e., completed and reduced to practice. The CCPA held that the material placed on sale must be treated as section 102(b) prior art which would have made the claimed invention obvious under section 103.
In In re Foster[19] involving a printed publication in “Industrial and Engineering Chemistry,” the CCPA applied the published invention as a section 102(b) prior art reference which would have made the claimed invention obvious under section 103. The CCPA held that the prior art invention had been completed, i.e., reduced to practice, before the date of the disqualifying publication (as attested by a Rule 131 affidavit, and as asserted in the publication itself).[20]
The difficulty postulated by the panel majority, that sections 102(b)/103 could not be applied if the thing offered must be reduced to practice, fails to materialize in real life. The first inquiry is whether the thing offered has been reduced to practice by the critical date and, thus, become prior art under section 102(b). Reduction to practice has occurred if one of the “things” offered has ever been completed or built and shown to work. Only then .is it necessary to compare the claims to the prior art *662 for determination of obviousness under section 103.[21]
In the present case, the Claims Court applied a prototype as prior art against UMC's claimed invention, but held that the claimed invention would not have been obvious in view of the prototype. Similarly, if the thing offered on July 27 had been reduced to practice, the thing offered would have been available as prior art against UMC’s claimed invention under sections 102(b)/103. However, the thing offered was not reduced to practice by the critical date, and it did not become part of the prior art under sections 102(b)/103.
BINDING PRECEDENT: NO REDUCTION TO PRACTICE; ON-SALE BAR REJECTED
I must respectfully differ with the panel majority in the interpretation of several cited cases in our prior jurisprudence, in which the requirement of a reduction to practice was a critical element in the decision to apply or not apply the on-sale bar.
In In re Dybel,[22] the CCPA held that an on-sale bar could not be sustained because the thing offered had not been reduced to practice prior to the critical date. The CCPA reasoned that an “invention” does not exist until it has been reduced to practice, and an invention cannot be said to be “on sale” until it has come into existence:[23]
The board relied on the executory contract of sale, which had been entered into prior to the critical date. However, for an invention of the type involved here to be “on sale,” it must be complete at least to such an extent that the purchaser knows how it will perform. The record fails to show that the invention was complete or that either appellant or Ford knew how the invention would perform at the time it was installed.[8]
In Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,[24] the Federal Circuit held that a “bare offer to sell” did not create an on-sale bar, because the thing offered had not been reduced to practice prior to the critical date. The Federal Circuit approved a jury instruction that “the section 102 bar applies to ‘a completed invention that has been shown to be commercially useful for the purpose intended.’ ” “The jury instruction focused attention on the factual question critical to this case, that is, whether the offers of sale involved ‘functional machines and processes.’ ” The Federal Circuit concluded that the on-sale bar was not satisfied, because “a reasonable jury could have found that the apparatus and method of the claims were not functional” by the critical date.[25]
In Great Northern Corp. v. Davis Core & Pad Co.,[26] the Federal Circuit held there was no “on sale” bar because the invention was still being tested and had not been reduced to practice prior to the critical date. The Federal Circuit rejected the defendant-appellant’s contention that actual transfers of the foam supports to a third party “without restriction and with intent to sell” created an on-sale bar under section 102(b). The lack of a reduction to practice was determinative: “The district court concluded, correctly we hold, that the *663 invention was not reduced to practice until after February 28,1977, and, therefore, the testing prior to that date did not constitute a § 102(b) bar.”
BINDING PRECEDENT: REDUCTION TO PRACTICE; ON-SALE BAR APPLIED
In In re Theis,[27] the CCPA required (and found) a reduction to practice before applying a section 102(b) on-sale bar:
It suffices that the claimed invention, reduced to practice, was placed on sale, i.e., offered to potential customers, prior to the critical date. * * * Even if no delivery is made prior to the critical date, the existence of a sales contract prior to that date has been held to constitute an “on sale” status for the invention if it has been reduced “to a reality.” * * * [Emphasis supplied; citations omitted.]
The CCPA rejected the applicant’s contention that the thing offered for sale was “inoperative,” affirming the board’s finding that the claimed invention had been reduced to practice prior to the critical date.
In In re Caveney,[28] the Federal Circuit held that “[a]n offer to sell a completed invention is sufficient to support a rejection under 35 U.S.C. § 102(b).” (Emphasis supplied.) In Caveney, the invalidating offer for sale was accompanied by actual samples, or physical embodiments, of the claimed invention.[29]
In In re Brig anee,[30] the Federal Circuit affirmed the board’s use of an on-sale bar, where the board found “both a complete reduction to practice of the Inventory and an offer to sell the Inventory prior to the critical date.” (Emphasis supplied.) On appeal, the applicant vigorously contested the finding of a reduction to practice. The Federal Circuit rejected the applicant’s argument because the record showed that “a fully marketable embodiment of the claimed invention existed, and was placed on sale prior to the critical date.”[31]
In Western Marine Electronics, Inc. v. Furono Electric Co.,[32] the Federal Circuit held the district court correctly applied an on-sale bar, where the district court found, prior to the critical date, an offer to sell a physical embodiment with every element of the claims present, complete, functional, and requiring no further testing:[33]
In answer to Wesmar’s reduction to practice argument, we reply that the district court properly looked to the totality of circumstances in determining that the claimed invention, as embodied in a structure meeting all the elements of the claim, was on sale prior to the critical date. The district court found the sonar system “complete” well before the critical date. * * * [Emphasis supplied.]
In General Electric Co. v. United States,[34] the Court of Claims questioned the reduction to practice requirement for the on-sale bar, but it concluded that resolution of that question was unnecessary because the trial division had found that the invention was reduced to practice, shown to be operable and commercially useful, and offered for sale, all prior to the critical date.
In Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,[35] the Fed *664 eral Circuit affirmed the use of an on-sale bar where the district court found (1) an existing physical embodiment of the claimed invention (a textile processing machine) was offered for sale prior to the critical date; (2) the claimed invention was “reduced to practice” prior to the critical date; and (3) the machines were on sale for profit, not for experimentation. The Federal Circuit questioned whether a physical embodiment should always be required for a reduction to practice, but concluded that resolution of that question was unnecessary because the district court had found both a physical embodiment and a reduction to practice.
In D.L. Auld Co. v. Chroma Graphics Corp.,[36] the Federal Circuit held that an on-sale bar applied to a method, where the method was reduced to practice and a product produced by the method was offered for sale prior to the critical date. The appellant argued that reduction to practice had not occurred prior to the critical date. The Federal Circuit reviewed the uncontra-dicted “crucial testimony that every step of the claimed method was followed in producing emblems offered,” which testimony “establish[ed] reduction to practice of the claimed method.”[37] (Emphasis supplied.)
In King Instrument Corp. v. Otari Corp.,[38] the Federal Circuit affirmed an on-sale bar under section 102(b) because “the district court properly relied on two factors as evidence of ‘on sale’: (1) a sale or offer of sale of the invention, and (2) an existing reduction to practice of the invention by the time of the offer.” (Emphasis supplied.) The Federal Circuit reviewed in detail the findings of fact supporting the prerequisite that the invention had been reduced to practice prior to the critical date.
EFFECT OF ELIMINATING THE REDUCTION TO PRACTICE REQUIREMENT
It is the users of the patent system who will suffer the impact of the panel majority decision. The question is not theoretical; it is of great practical importance.
Those inventors who have sought financing, or who have contacted potential customers, or who have engaged in other normal business activities before they have made a workable device will not know how the time limit for filing a patent application will be measured or where the line will be drawn between raw idea and proved invention. Inventors do not normally try to patent something they have not yet found workable. The patent law, and particularly section 112, does not favor it. Most inventors do not hire a patent lawyer until they know they have something that works, by which time, according to the panel majority, it may be too late.
The panel majority does not seem troubled by the prospect that, in accordance with its view, a concept barred under section 102(b) before the invention has been completed is forever foreclosed from the patent system. In its zeal to prevent such inventors from salvaging even narrow patent rights by “deft claim draftsmanship,” the majority removes the minimum standard by which courts have heretofore measured the on-sale bar. It is not clear why this change is being wrought on the community of inventors and on the public without providing some alternative measure of certainty. The “all circumstances” rule evoked by the panel majority means that the critical question in more and more cases can only be answered with finality by a judicial determination in which there is no further appeal.
As the technology community will attempt to cope with this decision, it perforce will file more “paper patents”: patents on sketchy concepts, before they have been reduced to practice and before the inventor knows whether or how the invention will work, or whether it is worth developing.
It is the details of how to make and use an invention that are of value in the patent *665 disclosure. Bare ideas are not patentable. Paper patents, prematurely filed, eviscerate the value of patent disclosures because they necessarily contain untested, speculative details. Paper patents merely add to the clutter of unproved patents in the PTO and in the courts, requiring fees, examinations, lawyers, trials and appeals, all of which disserve both the inventing and the using communities.
The UMC patent at issue was described by the Claims Court as a “paper patent.” This attribute, which the panel majority will now encourage, was held against the patentee in the Claims Court’s finding of noninfringement. This is a “Catch 22” situation.
Further, we have held that a “paper patent,” if insufficient under section 112, cannot provide priority for a continuation-in-part (CIP) application. Thus, even a paper patent may not save an inventor who recognizes the UMC trap and tries to cope with it by premature filing.
The section 102(b) bar was not intended to force inventors into the patent system prematurely. It was intended to force the inventor to file, if at all, within a reasonable time (1 year) after the inventor starts to profit from or discloses or uses the invention. The moving of the time bar does not speed up the invention development process; it merely entraps the inventor.
Industry does not commit time and money to the development of a technological idea without some marketplace investigation. Many businesses, especially small ones, seek customers for future delivery, before or while they are working out the technological details. The patent system should accommodate the ways of the real world, not place new pitfalls in the way of normal business pursuits.
CONCLUSION
This court, its predecessor courts, and numerous other courts, have held there is not an on-sale bar where the thing offered for sale was not reduced to practice by the critical date. When the courts have applied an on-sale bar, they have required that the thing offered for sale must be reduced to practice by the critical date. The precedent law cannot be read as merely “appearing” to assume the requirement in question. The panel majority does not write on a tabula rasa. The majority ignores binding precedent when it makes the conflicting holding that an on-sale bar may be applied without a reduction to practice.
I respectfully submit that precedent alone is sufficient reason to hold that an on-sale bar was not triggered by UMC’s July 27, 1967, offer because the thing offered was not reduced to practice 1 year prior to the filing of UMC’s patent application. I would affirm the Claims Court’s holding that the UMC patent is not invalid under section 102(b) or sections 102(b)/103, and I would decide the other issues presented on appeal.

. South Corp. v. United States, 690 F.2d 1368, 215 USPQ 657, 1 Fed.Cir. (T) 1 (1982).

. SSIH Equip. S.A. v. U.S. Int'l Trade Comm’n, 718 F.2d 365, 389, 218 USPQ 678, 697, 1 Fed.Cir. (T) 90, 118 (1983) (Smith, J., dissenting).

. South Corp., 690 F.2d at 1370, 215 USPQ at 658, 1 Fed.Cir. (T) at 2-3, quoting Moragne v. States Marine Lines, Inc., 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1970).

. One commentator, who has argued vigorously for elimination of the reduction to practice requirement, candidly has admitted "all the cases found have held that an invention can be 'on sale’ so as to commence the running of the one-year grace period only after the claimed invention has been actually reduced to practice.” (Citing CCPA cases; emphasis supplied.) 1 I. KAYTON, PATENT PRACTICE 4-15 (1985).

. In re Corcoran, 640 F.2d 1331, 1333-34, 208 USPQ 867, 870 (CCPA 1981); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 835, 221 USPQ 561, 564 (Fed.Cir.1984).

. 35 U.S.C. § 102(b) (1982).

. See, e.g., Urie v. Thompson, 337 U.S. 163, 169, 170, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949) (although "traditional purposes of statutes of limitations * * * require the assertion of claims within a specified period of time after notice of the invasion of legal rights,” action not barred because injury was "unknown and inherently unknowable”).

. See Andrews v. Hovey, 123 U.S. 267, 274, 8 S.Ct. 101, 105, 31 L.Ed. 160 (1887) ("purpose of [section 102(b)’s predecessor] was to fix a period of limitation which should be certain”). See also S.REP. NO. 876, 76th Cong., 1st Sess. 1 (1939), and H.R.REP. NO. 961, 76th Cong., 1st Sess. 1 (1939), discussing the legislation that reduced the period of limitation from 2 years to 1, stating Congress’ intent that the invention be "fully completed" before the bar starts to accrue. (Emphasis supplied.) So rigorous and short a period of limitation requires no less.

. Aerovox Corp. v. Polymet Mfg. Corp., 67 F.2d 860, 862, 20 USPQ 119, 121 (2d Cir.1933) (L. Hand, J.).

. Gould Inc. v. United States, 579 F.2d 571, 584, 217 Ct.Cl. 167, 198 USPQ 156, 168 (1978) (Nichols, J., dissenting).

. The phrase "reduction to practice” arose in connection with priority determinations in interference contests. For discussion of this origin in determining priority between conflicting inventors, see 1 W.C. ROBINSON, THE LAW OF PATENTS 529-60 (1890). In its historical development this phrase was applied to inventions at the first flush of positive results, as inventors attempted to obtain the earliest possible priority date. “ ‘Reduction to practice’ [was] not [originally] a statutory phrase. It [was] a phrase coined by the tribunals to indicate what may be proof of completion of the invention.” 1 W.F. ROGERS, THE LAW OF PATENTS 47 (1914). Today its only statutory appearance is in 35 U.S.C. § 102(g), that section directed to priority of inventorship.

. Digital Equip. Corp. v. Diamond, 653 F.2d 701, 718 n. 21, 210 USPQ 521, 540 n. 21 (1st Cir.1981).

. 1 W.C. ROBINSON, THE LAW OF PATENTS 183 (1890).

. Id. at 179-80. Compare McDonnell Douglas Corp. v. United States, 208 USPQ 728, 733 (Ct.Cl.1980) (Computer simulation of missile invention made reduction to practice appear inevitable.), with McDonnell Douglas Corp. v. United States, 670 F.2d 156, 161-63, 229 Ct.Cl. 323, 214 USPQ 857, 860-62 (1982) (Actual physical testing demonstrated significant flaws in missile design unrevealed by computer simulation. "It is not unimportant that eight of the first nine test flights failed to hit the target.” Held: no reduction to practice until physical tests showed capability of actual working.).

. Corcoran, 640 F.2d at 1333-34, 208 USPQ at 867 (quoting Timely Products Corp. v. Arron, 523 F.2d 288, 302, 187 USPQ 257, 267-68 (2d Cir.1975)).

. Id.

. Id. In Timely Products, the "thing offered” was a sock which "had been made and successfully tested,” i.e., reduced to practice. The patent claims did not read on the sock offered; nevertheless, the court treated the sock as § 102(b) prior art making the claimed invention obvious under § 103.

. Corcoran, 640 F.2d 1331, 208 USPQ 867.

. In re Foster, 343 F.2d 980, 988, 145 USPQ 166, 173 (CCPA 1965), cert. denied, 383 U.S. 966, 86 S.Ct. 1270, 16 L.Ed.2d 307 (1966).

. Foster, 343 F.2d at 986, 145 USPQ at 171.

 Moreover, "the invention” was not in existence before it was actually installed on the Ford press since the claims required the press and electronic circuit as well as the transducer. [Citation omitted.]

. See Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966) (First, "the scope and content of the prior art are to be determined.” Then, the “differences between the prior art and the claims at issue are to be ascertained.”); Corcoran, 640 F.2d at 1334, 208 USPQ at 870 (The thing offered for sale existed in "commercially marketable” form as shown by actual samples, i.e., reduced to practice, even though the patent claims did not read on the thing offered.).

. In re Dybel, 524 F.2d 1393, 1400-01, 187 USPQ 593, 598 (CCPA 1975).

. Id.

. Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 622-23, 225 USPQ 634, 638-40 (Fed.Cir.), cert. dismissed, — U.S.-, 106 S.Ct. 340, 88 L.Ed.2d 326 (1985).

. Id.

. Great Northern Corp. v. Davis Core & Pad Co., 782 F.2d 159, 164-65, 228 USPQ 356, 358 (Fed.Cir.1986).

. In re Theis, 610 F.2d 786, 791-92, 204 USPQ 188, 192-93 (CCPA 1979).

. In re Caveney, 761 F.2d 671, 675, 226 USPQ 1, 3 (Fed.Cir.1985) (citing Barmag wherein it was stated that "an invention is ‘complete’ if reduced to practice" 731 F.2d at 838, 221 USPQ at 567).

. Caveney, 761 F.2d at 675, 226 USPQ at 3.

. In re Brigance, 792 F.2d 1103, 1107, 229 USPQ 988, 990 (Fed.Cir.1986).

. Id., 792 F.2d at 1109, 229 USPQ at 992.

. Western Marine Elecs., Inc. v. Furono Elec. Co., 764 F.2d 840, 844-47, 226 USPQ 334, 337-39 (Fed.Cir.1985).

. Id., 764 F.2d at 845, 226 USPQ at 338.

. General Elec. Co. v. United States, 654 F.2d 55, 60-64, 211 USPQ 867, 871-75 (Ct.Cl.1981).

. Barmag, 731 F.2d 831, 221 USPQ 561; see also J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577, 229 USPQ 435 (Fed.Cir.), cert. denied, — U.S.-, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986).

. D.L. Auld Co. v. Chroma Graphics Corp., 714 F.2d 1144, 219 USPQ 13 (Fed.Cir.1983).

. Id., 714 F.2d at 1151, 219 USPQ at 18.

. King Instrument Corp. v. Otari Corp., 767 F.2d 853, 860, 226 USPQ 402, 406 (Fed.Cir.1985), cert. denied, — U.S. -, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986).