ELECTRO–NUCLEONICS, INC.,
Plaintiff,

v.

Gerald J. MOSSINGHOFF, Commissioner of Patents and Trademarks,
Defendant.

Civ. A. No. 83–3808.

United States District Court,
District of Columbia.

July 30, 1984.

William H. Meserole, Arlington, Va., Robert Scobey, New York City, for plaintiff.

John F. Pitrelli, Arlington, Va., for defendant.

## MEMORANDUM

GESELL, District Judge.

This is an action under 35 U.S.C. § 145 to compel the Commissioner of Patents and Trademarks to issue a patent on U.S. patent application Serial No. 122,515, filed February 19, 1980, based on an earlier application Serial No. 694,729 filed on June 10, 1976. The patent application covers elements of a device known as a "centrifugal analyzer including array loading alignment indexing and operational component systems." The patent examiner rejected the claim on the ground that the claimed invention was in public use for more than one year before the filing of the grandparent application on June 10, 1976 and thus subject to the statutory bar of 35 U.S.C. § 102(b).[1] The Board of Appeals of the Patent and Trademark Office affirmed the rejection on November 22, 1983, and the present action followed. A one-day bench trial was held, and the parties have fully briefed and argued the issues. The following constitutes the Court's findings of fact and conclusions of law.

The parties agree that the main issue in the case is whether a commercial demonstration of the claimed invention at a trade show on June 9, 1975—which was one day more than one year before the effective filing date of June 10, 1976—amounted to the claimed invention being "in public use or on sale" on that day and thus barred patentability under 35 U.S.C. § 102(b).[2]

1. Section 102 of the patent act provides in pertinent part: "A person shall be entitled to a patent unless—... (b) the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States...."

2. Besides the "public use" and "on sale" defenses to the Board of Appeals' action, the Commissioner also contends that certain of the claims for the invention are not entitled to be patented because the application does not fully disclose how the invention accomplishes those claims, as required by 35 U.S.C. § 112, first paragraph. Because of the resolution of the other issues, the Court does not reach this disclosure issue.

The device of which the claimed invention is a part analyzes blood components by spinning various samples of blood mixed with chemical reagants in a centrifuge and then measuring the amount of light that passes through the resulting mixture. The device is marketed under the trade name GemENI. The claimed uniqueness of the invention lies in a method for loading into the machine a disc containing the various blood samples and reagants to be analyzed, and bringing the disc into contact with a temperature-control unit.

In the spring of 1975, officials of Electro-Nucleonics, which was having financial difficulties at the time, decided to begin marketing efforts looking toward putting the GemENI on sale in early 1976. The GemENI was then in the late stages of a two-year development. Prior to May 10, 1975, the company placed an advertisement for the GemENI in the June 1975 issue of Lab World magazine, listing a price for the GemENI of $12,000.[3] The company also decided to send a prototype of the GemENI to the June 9–11, 1975, convention of the American Society of Medical Technologists (ASMT) in San Francisco. ASMT represents the laboratory technicians who are the ultimate users of machines like the GemENI, though usually purchase of such machines is made by clinical chemists or laboratory managers and not the ASMT members. The demonstration at the convention was expressly intended "to expose [the GemENI] to possible distributors." Administrative Record at 101.

Electro-Nucleonics employees demonstrated the operation of the prototype at its booth at the ASMT convention on June 9, 1975. The machine still had a number of bugs: among other problems, reagants spilled from the disc into the machine because the centrifuge did not always spin smoothly, the results of the analyses were not always consistent, and the device could perform only three blood tests (now it can do 40). Nevertheless, they were successful in demonstrating how the GemENI worked and what its potential was for use in medical laboratories. Subsequent changes made in the GemENI after the ASMT convention were relatively minor and did not alter the design features claimed in the patent application.

Even though the purpose of the demonstration at the ASMT show was to stimulate buyer interest, the GemENI was not actually sold or on sale at the convention. No sales persons were at the convention in connection with the product. No sales orders were taken, and employees were instructed ahead of time to take no orders. Electro-Nucleonics had no ability to deliver the GemENI or predict a firm delivery date. No sales literature for the GemENI was distributed at the convention. Nonetheless, the demonstration stimulated considerable interest among the medical technologists at the convention.

There is no real dispute about these facts. The case boils down to the legal significance under 35 U.S.C. § 102(b) of the commercial demonstration of the GemENI prototype on June 9, 1975. This Court has little difficulty in concluding that the GemENI was not actually on sale on that day, but that it was in public use. Thus the decision not to issue the patent cannot be upset.

Past cases often have lumped together the "public use" and "on sale" bars of Section 102(b), for the simple reason that the unveiling of a product to potential customers can constitute both activities at the same time, and also because one clear purpose of the statute was to prevent inventors from extending the useful life of their 17-year monopoly by commercially exploiting the invention well before applying for a patent. *See, e.g., Omark Industries v. Carlton Co.,* 652 F.2d 783, 786–87 (9th Cir.1980); *Red Cross Mfg. Corp. v. Toro Sales Co.,* 525 F.2d 1135, 1140–41 (7th Cir. 1975); *In re Yarn Processing Patent Validity Litigation,* 498 F.2d 271, 277–78 (5th

---

**3.** There is no proof that the magazine was distributed before the critical date of June 10, 1975, although the reference in the advertisement to the convention shows that that was Electro-Nucleonics' intent.

Cir.1974). In this case, however, the analysis becomes better focused when the two distinct bars are considered separately.

The GemENI cannot realistically be considered to have been "on sale" at the ASMT convention. Of course, the demonstration was expected ultimately to encourage sales. But no sales could have been consummated at the convention or even shortly thereafter. *Compare Poole v. Mossinghoff,* 214 U.S.P.Q. 506, 509–10 (D.D.C.1982); *Red Cross Mfg. Corp. v. Toro Sales Co.,* 525 F.2d at 1140.

 However, there is no question that the demonstration at the convention falls under the "public use" bar. As one often-cited case defined it, "[g]enerally, any non-secret use of a completed and operative invention in its natural and intended way is a 'public use' within the meaning of this section." *FMC Corp. v. F.E. Myers & Bro. Co.,* 384 F.2d 4, 9 (6th Cir.1967). Display of a new product at a trade show has been squarely held to constitute such public use, even where the product did not go on sale for two years thereafter. *Faulkner v. Baldwin Piano & Organ Co.,* 561 F.2d 677, 683–84 & n. 10 (7th Cir.1977). The cases construe "public use" broadly, *see Watson v. Allen,* 254 F.2d 342, 345 (D.C. Cir.1958), and allow a narrow exception only for a public use mainly intended as an experiment to perfect the invention. *Id.* But marketing "experiments" to test the buying potential of the invention do not fit this exception. *See In re Smith and McLaughlin,* 714 F.2d 1127, 1135–36 (Fed. Cir.1983); *Omark Industries v. Carlton Co.,* 652 F.2d at 787; *Faulker v. Baldwin Piano & Organ Co.,* 561 F.2d at 684 n. 10.

Electro-Nucleonics does not deny that its main purpose in displaying the GemENI was marketing and not experimental. It seeks instead to carve a new exception to the public use doctrine. Public use, it contends, should only be found

where the invention was used by its ultimate users in its intended manner, not where the invention was shown by the inventor to the ultimate users or potential distributors but not used by them. This is far too nice a distinction, and it cuts far too deeply into the statute's purpose. Section 102(b) was meant to force inventors to seek a patent within a year after marketing begins. The exception sought by Electro-Nucleonics would allow extensive marketing activities by inventors that would not trigger the statutory bar of Section 102(b). This would in effect extend the inventor's monopoly beyond the clear intent of Congress. The Court concludes that a public use occurred here before the one-year deadline.[4]

Accordingly, the Clerk of Court is directed to enter judgment for the defendant.

---

**4.** Electro-Nucleonics employees themselves thought the June 9 demonstration triggered the one-year period. They rushed to try to get the application filed by June 9, 1976. One of the inventors listed on the application testified that he was so upset that the filing was not made until June 10, 1976 that he almost wept. The late filing was not the fault of any of the company's employees or their present counsel.