824 F.2d 980
 Unpublished disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
RICON CORPORATION, Appellee,
v.
ADAPTIVE DRIVING SYSTEMS, INC, Appellant.
 Appeal No. 86-1352.
 United States Court of Appeals, Federal Circuit.
 June 26, 1987.
 
 Before SMITH, NIES and NEWMAN, Circuit Judges.
 NIES, Circuit Judge.
 
 DECISION
 
 1
 Adaptive Driving Systems, Inc., appeals from the holding of the United States District Court for the Central District of California, 229 USPQ 731 (C.D.Cal.1986), that Ricon Corporation's U.S. Patent No. Re. 31,178 is not invalid by virtue of the on-sale or public use provisions of 35 U.S.C. Sec. 102(b) (1982). The district court had bifurcated the trial pursuant to Fed.R.Civ.P. 42(b), trying only the section 102(b) validity issues. After holding that the sales and uses of two embodiments of the invention created no section 102(b) bar, the district court certified its order pursuant to 28 U.S.C. Sec. 1292(b) (1982). Adaptive petitioned this court for leave to appeal, and this court granted that petition on June 15, 1986. We affirm.
 
 OPINION
 
 2
 The issue of this appeal is solely one of law: Whether any of the sales and uses of the invention more than one year prior to the filing date of the application resulting in the subject patent give rise to a public use or on-sale bar.
 
 
 3
 The inventor Deacon, working through his father's company, Ricon, developed the subject invention. At the time he was an employee of Motorette, which was in the business of installing wheelchair lifts. A relationship was worked out that Ricon would build the wheelchair lifts and Motorette would sell them. The subject sales were, however, made by Ricon and were made to personnel of Motorette. One prototype was purchased about four months before the critical date by an employee Cannon who was confined to a wheelchair, and a more refined prototype was sold ten days before the critical date to Motorette's president Solomon, whose handicap is not specifically identified. There is testimony that Solomon and his wife are both confined to wheelchairs. Cannon and Solomon used the lifts without restriction in their daily lives.[1] There is here no question that Adaptive established a prima facie case of public use by virtue of the uses by Cannon and Solomon. Similarly, there is no question that Adaptive established a prima facie case of an on-sale bar by virtue of Ricon's sales. The issue, thus, becomes whether the patent owner, Ricon, has "come forward with convincing evidence to counter that showing." TP Laboratories, Inc. v. Professional Positioners, Inc., 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.1984), cert. denied, 469 U.S. 826 (1984); see also Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 264 (1887). The trial court held that it had. We review the district court's conclusions on public use and on-sale as questions of law, while the facts underlying the conclusions are subject to the clearly erroneous standard of review. Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261, 1266, 229 USPQ 805, 808 (Fed.Cir.1986), cert. denied, 107 S.Ct. 875 (1987).
 
 
 4
 * Adaptive challenges the district court's entire analysis of the section 102(b) bars for failing to apply the standards required by this court for determining experimental use. Adaptive bases its argument on the following passage from In re Brigance, 792 F.2d 1103, 1107, 229 USPQ 988, 991 (Fed.Cir.1986):
 
 
 5
 This court has repeatedly recognized, when reviewing issues arising under the public use or on sale bar of section 102(b), that these issues must be determined by considering the totality of the circumstances. Factors we have considered include: the length of the test period; whether any payment was made for the invention; whether there is any secrecy obligation on the part of the user; whether progress records were kept; whether persons other than the inventor conducted the asserted experiments; how many tests were conducted; and how long the test period was in relation to test periods of similar devices. [Footnotes omitted.]
 
 
 6
 See also Hycor Corp. v. Schlueter Co., 740 F.2d 1529, 1535, 222 USPQ 553, 557 (Fed.Cir.1984); TP Laboratories, 724 F.2d at 971, 220 USPQ at 582. Adaptive argues that the district court erred, as a matter of law, in failing to address each factor referred to in the foregoing quote. This argument is specious; it ignores the first sentence of the quote, distorts the meaning of the second, and leaves out the conclusion: "This list of factors is by no means all inclusive, but merely serves as a basis for objective analysis under section 102(b)." Brigance, 792 F.2d at 1108, 229 USPQ at 991. In none of our section 102(b) cases have we created a list of incantations which the district court must utter to ward off reversal on appeal. Certain circumstances may render any one or all of the factors listed in our cases irrelevant in applying section 102(b). Application of the on-sale and public use bars of section 102(b) presents "an infinite variety of legal problems wholly unsuited to mechanically-applied, technical rules.... As a result, this court has been careful to avoid erecting rigid standards for section 102(b)." Western Marine Elec., Inc. v. Furuno Elec. Co., 764 F.2d 840, 844, 226 USPQ 334, 337 (Fed.Cir.1985). Instead, this court has consistently emphasized that the totality of the circumstances must be considered in determining whether a particular event creates an on-sale or public use bar. See Harrington Mfg. Co. v. Powell Mfg. Co., 815 F.2d 1478, 1480-81 & n. 2, 2 USPQ2d 1364, 1366 & n. 2 (Fed.Cir.1986); Reactive Metals & Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1585 n. 4., 226 USPQ 821, 826 n. 4 (Fed.Cir.1985); Western Marine, 764 F.2d at 845, 226 USPQ at 337; Hycor, 740 F.2d at 1535, 222 USPQ at 557; TP Laboratories, 724 F.2d at 971, 220 USPQ at 582; In re Smith, 714 F.2d 1127, 1137, 218 USPQ 976, 984 (Fed.Cir.1983). Further, the mere fact that the district court did not mention each item of evidence is not indicative that it was not considered. Kansas Jack, Inc. v. Kuhn, 719 F.2d 1144, 1150, 219 USPQ 857, 861 (Fed.Cir.1983).
 
 II
 
 7
 The district court found that neither the inventor nor any person at Ricon were or ever had been confined to a wheelchair and that, before building the two prototypes, Ricon had never manufactured equipment to assist persons with ambulatory impairments. At the time of the tests at issue, Ricon made equipment to unload tuna boats. The court further found that the design requirements of a lift for wheelchair use are unique and different from general weight lifting devices and that the fact that a prototype would mechanically function from the beginning did not, and reasonably could not, lead the inventor to conclude that it was at that time suitable for use as a wheelchair lift. These facts provide the foundation for the court's conclusion that the sales to Cannon and Solomon who made real-life use of the lifts were for experimental purposes.
 
 
 8
 Adaptive relies on Cannon's and Solomon's payments for their lifts as indicative that the sales were not primarily for experimental purposes. Payments for the lifts are undoubtedly factors to be considered and the court did so. However, the fact of payments does not per se negate experimental use. See TP Laboratories, 724 F.2d at 973, 220 USPQ at 583. Further, the court found that no royalty was paid to the inventor on these sales.
 
 
 9
 That the inventor did not conduct the experiments and that the purchasers were under no secrecy obligation are argued as further evidence of the lack of experimental purpose. The district court's findings that the inventor was not handicapped, and that the purchasers were under no restriction of use because "it was necessary for testing purposes that the prototype lift be used in various conditions by a handicapped person to determine its suitability for use as a wheelchair lift," 229 USPQ at 732, amply counter Adaptive's assertion on this point.
 
 
 10
 Adaptive points out that the inventor "admitted that no progress records were kept concerning uses of the lift...." The trial court found, however, that both purchasers reported to Deacon on a regular basis and that, as a result, changes were made to both prototypes, including major changes for which the Cannon lift was removed from the van. While the lack of written progress records is circumstantial evidence of a non-experimental purpose, TP Laboratories, 724 F.2d at 969, 220 USPQ at 581, it is not conclusive. Here, daily oral reports and resulting modifications are a strong indication of experimental purpose. We also find unpersuasive Adaptive's argument that the tests lasted too long compared to tests of later models. While tests made three years later were shorter, by that time, Ricon was experienced in the manufacture of wheelchair lifts.
 
 
 11
 Adaptive argues that the claimed invention should have been held in public use as defined in section 102(b) by virtue of the October 6, 1972, demonstration of a prototype at the Veterans' Administration regional training program for VA employees at the Wilshire Hyatt House Hotel in Los Angeles. Adaptive argues "In this case, the conclusion is even more compelling [sic]" than that of Electro-Nucleonics, Inc. v. Mossinghoff, 593 F.Supp. 125, 224 USPQ 435 (D.D.C.1984). That case, which is not precedent of this court, involved a prototype blood tester demonstrated at a convention of the American Society of Medical Technologists before the critical date. Despite a number of factual similarities with this case, Electro-Nucleonics can be distinguished on one important ground. The district court in that case found that the purpose of the demonstration "was to stimulate buyer interest." 593 F.Supp. at 127, 224 USPQ at 436. The district court here found an entirely different purpose on the part of the inventor and Motorette--to elicit assistance in perfecting the invention.
 
 
 12
 Adaptive urges that the inventor's activities at the VA program were at least test marketing. However, Adaptive has not shown that the inventor or Motorette was "attempting to gauge consumer demand for his claimed invention." In re Smith, 714 F.2d at 1135, 218 USPQ at 983. Indeed, the findings of the district court belie Adaptive's contention that the VA demonstration was "a trader's, not an inventor's experiment." In re Theis, 610 F.2d 786, 793, 204 USPQ 188, 193 (CCPA 1979).
 
 CONCLUSION
 
 13
 The trial court held that the claimed "invention was not tested sufficiently to determine its fitness for use as a wheelchair lift until after [the critical date]." 229 USPQ at 735. The court cited the Supreme Court's seminal public use case, City of Elizabeth v. American Nicholson Pavement Co., 97 U.S. 126, 136 (1877), for the proposition "A machine is being used experimentally if it is being used to determine its fitness for its intended purpose." Under that standard, as applied to all of the circumstances of this case, we are unpersuaded of legal error in the district court's holding that the sales to Cannon and Solomon, their use of the prototypes, and the VA demonstration were all experimental.
 
 
 
 [1]
 The court found that the first offer to sell to a customer of Motorette's was after the critical date. Adaptive challenged that finding below but did not pursue the issue on appeal