**BAKER OIL TOOLS, INC.,**
**Plaintiff-Appellant,**

v.

**GEO VANN, INC., Defendant-Appellee,**

**BAKER OIL TOOLS, INC.,**
**Plaintiff-Appellant,**

v.

**TEXAS IRON WORKS, INC.,**
**Defendant-Appellee.**

Appeal Nos. 86–552, 86–553.

United States Court of Appeals,
Federal Circuit.

Sept. 17, 1987.

William Norvell, Jr., Norvell & Associates, Houston, Tex., argued for plaintiff-appellant. With him on brief, were Martin L. McGregor and Terry J. Owens.

Patricia N. Brantley, Arnold, White & Durkee, Houston, Tex., argued for defendants-appellees Geo Vann, Inc. With her on brief, were Edward W. Goldstein and Michael L. Lynch.

Jack W. Hayden and David B. Dickinson, Houston, Tex., were on brief, for defendants-appellees, Texas Iron Workers, Inc.

Before BALDWIN\*, Senior Circuit Judge, NEWMAN, and ARCHER, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

In these consolidated appeals from the United States District Court for the Western District of Louisiana, Baker Oil Tools, Inc. ("Baker Oil") appeals the grant of summary judgment in favor of defendants Geo Vann, Inc. and Texas Iron Works, Inc. (together "Geo Vann"). *Baker Oil Tools, Inc. v. Geo Vann, Inc.*, Nos. 83–2655, 84–0513 (W.D.La. Sept. 24, 1985).

---

\* The Honorable Phillip B. Baldwin assumed Senior Circuit Judge status effective November 25, 1986.

The district court on Geo Vann's motion for summary judgment held (1) claims 1 and 21 of the patent in suit invalid under 35 U.S.C. § 102(b) on the ground that the claimed invention was in public use and on sale more than one year before the patent application was filed; (2) all of the claims unenforceable based on inequitable conduct during patent prosecution before the United States Patent and Trademark Office ("PTO"); and (3) the case exceptional under 35 U.S.C. § 285.

Baker Oil asserts that certain material factual issues were improperly resolved against the nonmovant Baker Oil, contrary to the requirements of Fed.R.Civ.P. 56(c), and that the court incorrectly applied controlling principles of law.

### The Issue of Public Use/On Sale

Baker Oil in the late 1960's was providing gravel packing services using a device it had developed called the "NGP" gravel packer, a device whose deficiencies led to the project that culminated in the invention here at issue. In 1970 Rudy B. Callihan and his co-workers designed and built a device having, except for the April 1971 modification noted below, all of the elements of the device that became the subject of United States Patent No. 3,987,854 (the '854 patent). On November 6, 1970 this initial device was subjected to various above-ground tests at Baker Oil's engineering test facility, using Houston tap water as the test fluid. This initial device, called the "Retrieva DGP", was then arranged to be used in oil and gas wells owned by Baker Oil customers, Baker Oil not having wells of its own.

Before and after the critical date of February 17, 1971 Baker Oil conducted several gravel packing operations at live wells of Signal Oil & Gas and Chevron Oil. Baker Oil's position is that it did not achieve a reliable gravel packing device until the structure was modified after the critical date of February 17, 1971, referring inter alia to its "Unsatisfactory or Unusual Job Report Form[s]" and to a memorandum dated March 16, 1971 from a field employee, Mr. E.L. Runnels, to Mr. Callihan.

Geo Vann disputes Baker Oil's view of these documents and their probative value as evidence of primarily experimental purpose. However, Baker Oil correctly states that on motion for summary judgment the district court was required to resolve in Baker Oil's favor these disputed questions of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion"); *Palumbo v. Don-Joy Co.*, 762 F.2d 969, 973, 226 USPQ 5, 7 (Fed.Cir.1985) (the court should "resolve all doubt over factual issues in favor of the party opposing summary judgment") (quoting *Litton Industrial Prod. Inc. v. Solid State Systems Corp.*, 755 F.2d 158, 163, 225 USPQ 34, 37 (Fed.Cir.1985)). *See also* 6 Moore's Federal Practice ¶ 56.13[1] (1.–0] (2d ed. 1987) ("The function of the summary judgment is to avoid a useless trial").

In April 1971 Baker Oil modified the device by removing from the crossover assembly the ball and seat used to set the packer and placing it in the setting tool portion of the apparatus. This was called the "modified Hydro-Trip" assembly, and the record states it was first tested in a live well in May 1971, that it performed satisfactorily, and that it eliminated the sand and silt accumulations that had previously interfered with operation of several components of the device.

The Callihan et al. patent application Serial No. 227,558 (the '558 application), as filed on February 17, 1972, described as the invention and claimed the device with the April/May 1971 modification. Baker Oil argues that its field operations prior to the critical date were not a public use or sale of

the claimed invention, because the claimed invention was not yet in existence: it was designed after Runnels' adverse report of March, was built in April, and first tested in May.

The district court held that the device of the '854 claims was in public use and on sale prior to the critical date. The district court relied on "admissions" of "reduction to practice" made by Baker Oil before the Patent and Trademark Office (PTO) in connection with an interference with a patent of inventors Young et al., discussed *infra*. The court found as fact that there was no material difference between the device as it existed before the critical date and the claimed device, and that the admission of reduction to practice made "irrelevant" Baker Oil's assertions of experimental purpose.

### The Young et al. Interference

Baker Oil had initiated an interference between the Callihan '558 application, filed February 17, 1972, and U.S. Patent No. 3,710,862 of Young et al., filed June 7, 1971. In order to institute the interference, in accordance with PTO practice Baker Oil filed a Rule 205 amendment and a Rule 204(c) statement in which it averred that the invention corresponding to the proposed counts of the interference had been reduced to practice by Baker Oil "prior to June 7, 1971".

The proposed counts of the interference were claims of the Young patent, copied into the Callihan '558 application in accordance with interference practice. The proposed counts, according to Baker Oil's representations to the PTO, encompassed both the Young device and the early device made and tested by Baker Oil. The patent examiner held that Callihan could make some but not all of the proposed interfer-

ence counts.[1] Supporting documents were filed with the PTO including, as evidence of Baker Oil's asserted reduction to practice of the proposed counts, documents pertaining to the gravel packing in December 1970 at a Signal Oil well. Baker Oil obscured the dates on the copies of these documents submitted to the PTO, an act on which the district court placed weight as a matter of inequitable conduct, as will be discussed *infra*.

Baker Oil subsequently abandoned the interference. Young became "a winning party", as the patent examiner put it, against the Callihan '558 application, and the entire Young patent disclosure, including the interference counts that Callihan had abandoned (the "lost counts"), became prior art under 35 U.S.C. § 102(g) against the Callihan patent application.

These events will be considered in connection first with the district court's decision under 35 U.S.C. § 102(b).

### Section 102(b)

The district court, referring to Callihan's "admission" that the lost interference counts had been reduced to practice in December 1970, held that Baker Oil had reduced to practice the Callihan claimed invention of the '854 patent before the critical date of February 17, 1971. The court held that it was "immaterial" that the device was later modified, and that "reduction to practice ... would make any issue of experimentation irrelevant as reduction to practice ended the experimentation period."

Baker Oil argues that it should not be bound by such an "admission" because a "Rule 205 Amendment is an assertion in the nature of a pleading which is tested in an inter-partes interference by evidence." [2]

---

1. Three counts were not allowed in the interference apparently on the basis that the Young device only used longitudinal movement, whereas Baker Oil's device used both rotational and longitudinal movement, to open the circulation path.

2. Baker Oil does not distinguish between its amendment filed in compliance with Rule 205, and the accompanying Rule 204 affidavit or

declaration. These materials are described in the pertinent regulations, as follows:

37 C.F.R. § 1.205 (1973) (a) Before an interference will be declared with a patent, the applicant must present in his application, copies of all of the claims of the patent which also define his invention and such claims must be patentable in the application. However, an interference may be declared after copying the claims excluding an immaterial limitation or variation

Baker Oil had abandoned the interference before the stage at which its asserted reduction to practice would have been litigated inter partes. The examiner had accepted ex parte, for the purpose of declaring an interference with the Young patent, Baker Oil's representations that it had reduced to practice the subject matter of some of the Young claims. This is more than a pleading, but not an adjudication. It is a sworn statement of fact.

Baker Oil further argues that even if reduction to practice is deemed admitted with respect to the early device that Baker Oil relied upon in the interference, that ruling can not apply to the claimed invention of the '854 patent because that invention neither existed nor was involved in the interference.

It was undisputed that the '558 application claims that included the April/May modification to the device were not in, or proposed to be in, the Young interference. These claims were not the subject of an admission, and upon dissolution of the interference these claims continued to be prosecuted, as discussed *infra,* while the claims that were added for interference purposes were canceled.

We agree with Baker Oil that the district court erred in law in its interpretation of these interference proceedings. Baker Oil's assertion before the PTO that the early device was reduced to practice should not have been given preclusive or estoppel effect. It may of course be considered as a factor in determining whether the pre-critical date uses were indeed primarily experimental, Fed.R.Evid. 801(d)(2), and Baker

Oil concedes in its brief that appellees "are entitled to use the statements made in the interference as some evidence tending to refute assertions of experimentation," but it did not of itself establish that a completed invention existed at that time.

■ Claim 1, the parties agree, includes a limitation based on the change in the gravel packer apparatus after the critical date. Although the district court held that the "claimed modifications were immaterial as *no change was made that concerns the limitations in the claims"* (emphasis by district court), this holding is not in accord with the undisputed facts. Geo Vann had conceded before the district court that the gravel packer as set forth in claim 1 differs from the device that existed and was tested in the Signal Oil and Chevron wells prior to the critical date.

Whether the change in the devices is "material" is a factual matter. That factual matter was resolved by the district court against the nonmovant Baker Oil, contrary to the rules, and was material to the decision in favor of Geo Vann.

For these several reasons, the grant of summary judgment that the device of the claims was in public use or on sale prior to the critical date must be reversed.

### Section 103/102(b)

The district court did not distinguish between the question of whether the invention of the '854 claims had been publicly used or sold before the critical date, and the question of whether the device as it actually existed before the critical date was

---

if such immaterial limitation or variation is not clearly supported in the application or if the applicant otherwise makes a satisfactory showing in justification thereof.

37 C.F.R. § 1.204 (1973) (c) When the effective filing date of an applicant is more that 3 months subsequent to the effective filing date of the patentee, the applicant, before the interference will be declared, shall file two copies of affidavits or declarations by himself, if possible, and by one or more corroborating witnesses, supported by documentary evidence if available, each setting out a factual description of acts and circumstances performed or observed by the affiant, which collectively would prima facie entitle him to an award of priority with respect

to the effective filing date of the patent. This showing must be accompanied by an explanation of the basis on which he believes that the facts set forth would overcome the effective filing date of the patent. This showing must be accompanied by an explanation of the basis on which he believes that the facts set forth would overcome the effective filing date of the patent.... If the examiner finds the case to be otherwise in condition for the declaration of an interference he will consider this material only to the extent of determining whether a date prior to the effective filing date of the patent is alleged, and if so, the interference will be declared.

publicly used or sold before the critical date and thereafter modified to produce the claimed invention. The district court held against Baker Oil under both theories.

Section 103/102(b) deals with patent validity based on obviousness in view of the prior art. If a device was in public use or on sale before the critical date, then that device becomes a reference under section 103 against the claimed invention. *In re Kaslow,* 707 F.2d 1366, 1374, 217 USPQ 1089, 1095 (Fed.Cir.1983); *In re Corcoran,* 640 F.2d 1331, 1333, 208 USPQ 867, 869 (CCPA 1981).

The district court held that Baker Oil's pre-critical date device was prior art because it was "on sale", and that subsequent experimentation was "irrelevant" if the early device had been reduced to practice. The district court stated that reduction to practice was admitted and that "reduction to practice ended the experimentation period".

The "critical date", the date one year before the filing date of the patent application, is determined retrospectively. Therefore, those activities that will act as a bar must be of such character that it is apparent at the time they are conducted that patent filing must be completed within a year. Substantial property rights are at issue, and the trial court must determine with precision when the bar came into being, for the bar must be proven by clear and convincing evidence. *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1266, 229 USPQ 805, 808 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 876, 93 L.Ed.2d 829 (1987).

■ On remand, the district court should consider not only Baker Oil's admission, but also the significant amount of other evidence, including evidence of experimental use, related to the question of whether the claimed device was in public use or on sale prior to the critical date. *See Western Marine Electronics, Inc. v. Furuno Electric Co.,* 764 F.2d 840, 845, 226 USPQ 334, 337–38 (Fed.Cir.1985) ("court will want to consider the totality of circumstances relating to the character and extent of commercial activities, ... along with the character

and extent of bona fide experimentation"). Such considerations historically applied the standard of whether any public use or sale (or offer to sell) was "mainly for the purpose of trade or profit" or "substantially for the purpose of experiment," *Smith & Griggs Manufacturing Co. v. Sprague,* 123 U.S. 249, 256, 8 S.Ct. 122, 126, 31 L.Ed. 141 (1887). *See TP Laboratories, Inc. v. Professional Positioners, Inc.,* 724 F.2d 965, 971, 220 USPQ 577, 582 (Fed.Cir.), *cert. denied,* 469 U.S. 826, 105 S.Ct. 108, 83 L.Ed.2d 51 (1984) "[I]f a use is experimental, even though not secret, 'public use' is negated.") If the challenged use or sales activities were associated with primarily experimental procedures conducted in the course of completing the invention, as the particular invention may require, a section 102(b) bar does not vest. *Id.* Baker Oil thus correctly states that the section 102(b) bar is avoided if the primary purpose of the work was experimental. *Great Northern Corp. v. Davis Core & Pad Co.,* 782 F.2d 159, 165, 228 USPQ 356, 358 (Fed.Cir.1986).

The law recognizes an inventor's need to test the invention, to ascertain whether the work is complete or further changes should be made, and to show that the invention will work for its intended purpose. *Id.* The law further recognizes that such testing and development may encompass or even require disclosure to the public, without barring the inventor's access to the patent system. *See, e.g., City of Elizabeth v. American Nicholson Pavement Co.,* 97 U.S. (7 Otto) 126, 135, 24 L.Ed. 1000 (1878) (testing by public in public view not "public use" if purpose primarily experimental); *Smith & Griggs,* 123 U.S. at 256, 8 S.Ct. at 125. *See also King Instrument Corp. v. Otari Corp.,* 767 F.2d 853, 861, 226 USPQ 402, 407 (Fed.Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1197, 89 L.Ed.2d 312 (1986). An invention can exist for the purposes of the statutory bar even though it may be later refined or improved, *In re Theis,* 610 F.2d 786, 792, 204 USPQ 188, 193 (CCPA 1979). *See also UMC Electronics Co. v. United States,* 816 F.2d 647, 2 USPQ2d 1465 (Fed.Cir.1987).

In determining whether a public use or sale was under circumstances "substantially for purposes of experiment," courts have considered various factors, such as the necessity for the public testing, *In re Smith,* 714 F.2d 1127, 1136, 218 USPQ 976, 983 (Fed.Cir.1983); the amount of control retained over the operation, *id.;* the extent of public testing in relation to the nature of the invention, *City of Elizabeth,* 97 U.S. at 135; the length of the test period, whether any payment was made, whether there was a secrecy obligation, whether progress records were kept, who conducted the experiments, *Hycor Corp. v. Schlueter Co.,* 740 F.2d 1529, 1535, 222 USPQ 553, 557 (Fed.Cir.1984); and the degree of commercial exploitation during the tests in relation to the purpose of the experimentation, *D.L. Auld Co. v. Chroma Graphics Corp.,* 714 F.2d 1144, 1151, 219 USPQ 13, 18–19. The underlying facts of each case must be considered in light of all the circumstances. *Western Marine,* 764 F.2d at 845, 226 USPQ at 337–38.

Baker Oil states that its series of tests under varying well conditions and device modifications was part of the over-all process of developing a workable and reliable gravel packing tool, a process that extended from November 1970 through at least May 1971. Baker Oil argues that the test operations in wells were necessary and that the equipment remained under Baker Oil's control throughout the operations. It is not stated that Signal or Chevron knew the detailed structure of the device that was being tested, although the district court remarked on the presence of a Signal representative and the absence of a secrecy agreement.

The district court found that "Baker charged for the packer components left in the well after completion of the packing." Baker Oil argues that such payment was incidental to the primarily experimental purpose of the operations, and that the court drew an improper adverse inference on summary judgment.

The circumstances of payment, it is well established, are factors to be weighed, but payment does not *per se* make a section 102(b) bar. *See, e.g., TP Laboratories,* 724 F.2d at 971–72, 220 USPQ at 582 (payment made for device is "merely a piece of evidence to add to the evidentiary scale"); *Watson v. Allen,* 254 F.2d 342, 347, 117 USPQ 68, 71 (D.C. Cir.1958) (even though car was sold with experimental shims in engine, "reasonable disposal of discarded prototypes of a still-experimental invention must, viewed favorably, be considered as incidental to experiment"); *Merrill v. Builders Ornamental Iron Co.,* 197 F.2d 16, 19–20, 93 USPQ 276, 279 (10th Cir.1952) (apparatus used to straighten car frames for which charge was made not "on sale" because "collateral to the development of the invention in its complete and perfected form"); *Gates Learjet Corp. v. Magnasync Craig Corp.,* 339 F.Supp. 587, 598–99, 173 USPQ 203, 210–11 (D.Colo.1972) (sale of 22 experimental units for $250–$400 each was "good faith use for experimental purposes"); *Adams v. Columbus Manufacturing Co.,* 180 F.Supp. 921, 925–26, 124 USPQ 92, 95–96 (M.D.Ga.1960) (sale of experimental models not a bar since there was no profit and changes were made following public testing).

The standard applied in such determinations is illustrated in decisions that have rejected the experimental use defense when sales were made. *See, e.g., Smith & Griggs,* 123 U.S. at 265, 8 S.Ct. 130 (50,000 buckles sold, held a bar because an established business and commercially successful); *In re Brigance,* 792 F.2d 1103, 1108, 229 USPQ 988, 991 (Fed.Cir.1986) (2,500 copies of the invention made and offered for sale held a bar in view of absence of objective evidence supporting experimental purpose); *Western Marine,* 764 F.2d at 846–47, 226 USPQ at 339 (offer to sell without restriction evidences primarily commercial and not experimental purpose); *Pennwalt Corp. v. Akzona, Inc.,* 740 F.2d 1573, 1581, 222 USPQ 833, 838–39 (Fed.Cir. 1984) (actual sale held a bar even though under a regulatory testing procedure because primary purpose was commercial exploitation); *In re Dybel,* 524 F.2d 1393, 1401, 187 USPQ 593, 599 (CCPA 1975) (on sale bar even though no profit realized because seller failed to communicate its

experimental nature); *General Electric Co. v. United States*, 654 F.2d 55, 63–64, 211 USPQ 867, 875 (Ct.Cl.1981) (actual sale held a bar because totality of patentee's actions showed device not experimental or restricted in use, i.e., no tests were reported back, devices were tested before shipment).

The disputed factual issue of experimental purpose was material to the decision. See *Armco, Inc. v. Cyclops Corp.*, 791 F.2d 147, 151, 229 USPQ 721, 724 (Fed.Cir.1986) (even though actual payment was made, material disputed fact as to experimental purpose negates summary judgment). The district court erroneously held that experimental purpose was immaterial after Baker Oil's "admission" of "reduction to practice" in the interference. It will be appropriate for the district court to determine this issue on remand.

Should the court determine that on all the evidence a Baker Oil device prior to the critical date was in public use or on sale in terms of section 102(b), it remains to be determined whether, for purposes of section 103/102(b), the differences were material between the '854 claimed invention and the device in public use or on sale. *Graham v. John Deere, Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 693–694, 15 L.Ed.2d 545, 148 USPQ 459, 467 (1966). This factual issue was contested by Baker Oil, *viz.* inventor Callihan's and Baker Oil's vice president Muse's testimony that the April/May modification of the setting tool was material to its satisfactory operation. *See Armco, Inc.*, 791 F.2d at 150 & n. 5, 229 USPQ at 723 & n. 5 (Fed.Cir.1986). The district court erroneously resolved this factual issue adversely to Baker Oil, and the grant of summary judgment of invalidity on the basis thereof is reversed. The matter requires determination at trial.

### The Method Claim

Claim 21, the method claim, presents issues similar to those of claim 1, but not identical because of the somewhat different scope of the claims. The district court found that Baker Oil did not introduce the production tubing string into sealed en-

gagement with the packer, as required by claim 21, until after the critical date but, holding that the use of such production tubing would be "immediately recognized", in effect held claim 21 invalid under section 103/102(b). Such holding would be possible only if there were a section 102(b) bar extant, i.e., a rejection of Baker Oil's position that its activities before the critical date were primarily experimental. Upon determination on remand of whether such bar came into being, the patentability of claim 21 may be resolved by application of the principles discussed, considering all the pertinent evidence. *Western Marine*, 764 F.2d at 845, 226 USPQ at 337–38.

### The Issue of Inequitable Conduct

The district court held that Baker Oil had committed inequitable conduct in its prosecution of the '854 patent before the PTO. The court referred to Baker Oil's filing of documents in the Young interference "relating to a job performed for Signal Oil & Gas in December of 1970 using the claimed invention", stating that "Plaintiff's agent removed the dates from those documents submitted to the PTO." Referring to Baker Oil's "admissions to the PTO that the Signal job was successful, represented a reduction to practice and that the invention used therein was complete," the court concluded that Baker Oil had concealed the most pertinent prior art, its own device, by removing the dates from the documents. The court also referred to Baker Oil's belief at the time it abandoned the interference that this work was a public use, a belief not communicated to the examiner. The court held that "[a] reasonable examiner would have considered those sales and uses important in determining whether to allow the application to issue as a patent." The court also found "a culpable state of mind."

■ The material facts upon which a holding of inequitable conduct rests relate to both the intent of the actor and the materiality of the information. These two factors are considered in light of each other. *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1363,

220 USPQ 763, 773 (Fed.Cir.) (citing 37 C.F.R. 1.56(b)), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984). If the facts of materiality or intent are reasonably disputed, the issue is not amenable to summary disposition. *KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1577, 228 USPQ 32, 36 (Fed.Cir.1985).

Baker Oil asserts that materiality and intent to conceal had not been established by clear and convincing evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) ("the inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.")

Baker Oil disputed the factual issues of both materiality and intent, arguing that it had a reasonable basis for believing that its early work was not a bar to the patentability of the later device, to which the '854 patent is limited. Baker Oil argues that its early work was not deliberately concealed from the examiner; that even if the device referred to in the interference documents was reduced to practice it was not a section 102(b) reference because it was an experimental use; and even if deemed to be prior art under section 102(b) this work was no more than cumulative to the lost interference counts and the disclosure of the Young patent,[3] which the examiner treated as prior art and held were patently distinguished in the '854 claims.

Baker Oil had correctly advised the district court that it was standard procedure before the PTO, when filing documents for the purpose of attempting to institute an interference with an issued patent, to obscure the dates on the documents as filed and merely to aver that these records antedate the filing date of the adverse patent. The Manual of Patent Examining Procedure § 2308.02 states:

[I]t is not necessary that the exact date of conception or reduction to practice be revealed in the affidavits, declarations or exhibits if the affidavits or declarations aver observation of the necessary acts and facts, including documentation when available, before the patentee's effective filing date.

The district court referred to the "undisputed fact" of removal of the dates, apparently as evidence of culpable intent. But following this authorized and universally practiced PTO procedure carries no weight as evidence of culpable intent.

The trial court must view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor. *Diebold,* 369 U.S. at 655, 82 S.Ct. at 994. These disputed factual questions of both materiality and intent, if resolved in favor of the non-movant Baker Oil, can not support the summary judgment of inequitable conduct. That judgment is reversed and the matter is remanded for determination at trial.

### Attorney Fees

Having held Baker Oil's patent invalid by application of section 102(b), and having held that Baker Oil had practiced inequitable conduct before the Patent and Trademark Office, the district court awarded attorney fees, expenses, and costs to the defendants. In view of our reversal of the grant of summary judgment on these issues, the award premised thereon is vacated.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

---

3. Although the district court found that Baker Oil's "uses and sales prior to February 17, 1971 were more pertinent than anything considered by the examiner during prosecution of the '854 application," the basis for its finding is not delineated. As noted in footnote 1 *supra,* however, some of Baker Oil's interference counts were rejected apparently because of differences between its device and the Young invention. Since the inequitable conduct issue is remanded to determine intent, the district court should also clarify the basis for its finding that Baker Oil's early uses and sales were more pertinent than Young.