852 F.2d 1292
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CAPITAL CONTROLS COMPANY, INC., Plaintiff/Cross-Appellant,
v.
CHLORINATORS, INC. and James F. Haskett, Defendants/Appellants.
 Nos. 87-1604, 87-1641.
 United States Court of Appeals, Federal Circuit.
 June 7, 1988.
 
 Before RICH, DAVIS* and NIES, Circuit Judges.
 NIES, Circuit Judge.
 
 DECISION
 
 1
 Chlorinators, Inc. and its founder and officer, James F. Haskett, appeal from the judgment of the United States District Court for the Southern District of Florida, No. 84-8051 (as corrected Aug. 19, 1987), involving United States Patent No. 3,606,907 ('907) assigned to Capital Controls Company, Inc. ("CCC"). The district court had bifurcated the trial, trying only the liability issues raised in CCC's complaint for infringement. The court held, inter alia, that the '907 patent was not invalid as "on sale" within the meaning of 35 U.S.C. Sec. 102(b) (1982). We reverse that holding of the court and vacate the remainder of the court's opinion. Thus, we reverse in part, vacate in part, and remand for judgment to be entered in accordance with this decision.**
 
 OPINION
 
 2
 * The ultimate issue of whether the facts create an on-sale bar under section 102(b) is one of law. J.A. LaPorte, Inc. v. Norfolk Dredging Co., 787 F.2d 1577, 1581 n. 7, 229 USPQ 435, 438 n. 7 (Fed.Cir.), cert. denied, 107 S.Ct. 274 (1986); Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 837, 221 USPQ 561, 565 (Fed.Cir.1984). The parties agree that the facts are undisputed. Accordingly, we may resolve the issue by applying the appropriate rule of law to those undisputed facts. See, e.g., Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986); UMC Elecs. Co. v. United States, 816 F.2d 647, 657, 2 USPQ2d 1465, 1472 (Fed.Cir.1987), cert. denied, 108 S.Ct. 748 (1988).
 
 
 3
 There is no dispute that before the March 20, 1969 critical date (i.e., one year before the application filing date), on January 31, 1969, CCC sold three devices which embody the invention. Thus, Chlorinators and Haskett have proven a prima facie case of an on-sale bar. A section 102(b) bar is avoided if the primary purpose of the sale was experimental, Baker Oil Tools, Inc. v. Geo Vann, Inc., 828 F.2d 1558, 1563, 4 USPQ2d 1210, 1213 (Fed.Cir.1987), UMC, 816 F.2d at 656, 2 USPQ2d at 1472; Barmag Barmer, 731 F.2d at 839, 221 USPQ at 567, because the law recognizes that an inventor may need to have a customer test the invention to determine that the invention works for its intended purpose. The question here is whether the facts lead to the conclusion that the subject sales were for such purpose.
 
 
 4
 Our analysis must encompass all of the circumstances surrounding the sale and must focus on the policies underlying the bar. UMC, 816 F.2d at 656, 2 USPQ2d at 1471-72.
 
 II
 
 5
 More than a year before the filing date of the '907 patent, CCC sold three, vacuum-operated, switchover devices and accompanying equipment used for continuous water chlorination, covered by the '907 patent, to the City of Kalamazoo, Michigan. CCC contends that it selected Kalamazoo as a safe location to "test" the invention largely because the city checked its chlorination equipment three-times daily. Presumably, if the equipment did not work, the city would complain. CCC retained no control, however, over Kalamazoo's "test"; Kalamazoo made no promise of secrecy, Harrington Mfg. Co. v. Powell Mfg. Co., 815 F.2d 1478, 1481, 2 USPQ2d 1364, 1366 (Fed.Cir.1986); there was no agreement restricting resale or use, Western Marine, 764 F.2d at 846, 226 USPQ at 339; and no reports on the use of devices were given back to CCC.
 
 
 6
 CCC also contends that field tests in a corrosive, chlorine environment were necessary. The claims do not require a system able to supply chlorine, but a "gas." Consequently, such tests would relate to the customer's intended use, not the invention's operability. See General Elec. Co. v. United States, 654 F.2d 55, 64, 211 USPQ 867, 875 (Ct.Cl.1981). In any event, CCC failed to show a need for public testing, i.e., why it could not perform tests itself using chlorine if such tests were necessary. See Baker Oil, 828 F.2d at 1564, 4 USPQ2d at 1214. The only evidence, provided by Wentz's testimony, indicates that CCC had tested the invention before selling it to Kalamazoo. Such evidence undermines CCC's contention of experimental purpose in its sale to Kalamazoo. Id.
 
 
 7
 CCC also contends that, because field tests were necessary to verify functional reliability on a continuous basis, its invention was not reduced to practice until after the critical date and no on-sale bar could occur as a matter of law. As this court said in the UMC opinion, reduction to practice in the interference-law sense of the term is not always an absolute requirement of the on-sale bar. UMC, 816 F.2d at 656, 2 USPQ2d at 1471. In any event, the only basis for arguing, unsuccessfully we think, that there was no reduction to practice is that Kalamazoo was engaged in experimental testing. This argument is merely redundant.
 
 
 8
 The price CCC charged Kalamazoo was "arbitrary" (not to be used on future transactions), not negotiated, and allowed more than a standard discount. Such evidence, CCC contends, negates a "profit motive." CCC paid its usual sales commission to its Michigan sales representative, however, and does not dispute that it still made a profit on the sale. Evidence that it made a profit undermines CCC's argument that its device was undeveloped or experimental. General Elec., 654 F.2d at 59, 211 USPQ at 871. Moreover, a patent owner may have created an on-sale bar despite losing money on a sale. Barmag Barmer, 731 F.2d at 840, 221 USPQ at 568. Similarly, CCC notes that its first advertisements and price lists were unavailable until after the critical date. The first sale, however, need not be part of full-scale marketing. Id. at 838, 221 USPQ at 566.
 
 
 9
 Finally, CCC points out that at least one of the originally shipped switchover modules failed and that CCC shipped three replacement modules on March 21, 1969. There is no indication that a defect in the invention caused the failure or that the replacements were in any way different from the original modules. Indeed, it appears that the three "old" modules were returned to stock. That CCC changed the ball material, which is not a claim limitation, is irrelevant. See, e.g., Barmag Barmer, 731 F.2d at 838, 221 USPQ at 566 (immaterial that modifications made in delivered machines because no changes made that concern claim limitations); Western Marine, 764 F.2d at 847, 226 USPQ at 339. Further, a section 102(b) bar may apply even if the invention is later refined or improved. See Baker Oil, 828 F.2d at 1563, 4 USPQ2d at 1214.
 
 
 10
 Kalamazoo's Supervisor of Operations, Barnard, testified that he believed the modules were experimental, which favors CCC. On the other hand, no evidence in the record indicates how Barnard reached his belief. Moreover, the subjective belief of the inventor or customer is not controlling when objective evidence points otherwise. See, e.g., In re Brigance, 792 F.2d 1103, 1108 & n. 8, 229 USPQ 988, 991 & n. 8 (Fed.Cir.1986); Harrington, 815 F.2d at 1481 & n. 3; 2 USPQ2d at 1366 & n. 3. Here, there is no evidence that the inventor communicated the experimental nature of the sale. See In re Dybel, 524 F.2d 1393, 1401, 187 USPQ 593, 599 (CCPA 1975) (on-sale bar where seller failed to communicate experimental nature).
 
 
 11
 Appellant Haskett testified that CCC's policy was to test internally at its plant and, if necessary, to use local facilities such as swimming pools to run tests. Per Haskett, that policy dictated that "[i]f a unit was put for tests, say, on somebody's pool or an installation, it was not sold, there were no dollars involved." When the court asked Haskett to characterize the Kalamazoo sale, he stated "[t]here was no experimental basis ... it was bought." Although little credence might be given to the defendant's latter, self-serving response to the court, Haskett's other testimony states facts which could have been contradicted, but were not.
 
 III
 
 12
 On these facts we conclude that the district court erred as a matter of law in holding the '907 patent not invalid under section 102(b). Specifically, the court erred by requiring Haskett and Chlorinators to prove that the invention was commercially marketable, that CCC made a "normal" profit on its sale, and that the invention was actually reduced to practice. As a result of its error, the court's analysis failed to consider the totality of the circumstances and the policies underlying the section 102(b) bar. The undisputed facts lead us to hold that CCC's delay in filing the application for the '907 patent is unacceptable. Its sale of modules embodying the invention more than one year before the critical date constitutes a degree of commercialization not countenanced by the patent statute and an attempt to extend the period of lawful protection. Accordingly, the '907 patent is invalid.
 
 COSTS
 
 13
 We award costs to Chlorinators and Haskett as the prevailing parties.
 
 
 
 *
 The Honorable Oscar H. Davis did not participate in this decision
 
 
 **
 CCC cross appeals only to assert error in the district court's failure to find expressly that Chlorinators and Haskett were liable for inducing infringement and contributorily infringing the '907 patent. In view of our disposition of this appeal, No. 87-1604, we dismiss that cross appeal, No. 87-1641, as moot