861 F.2d 728
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Harold S. HEMSTREET, Plaintiff-Appellant,
v.
BURROUGHS CORPORATION, Defendant/Cross-Appellant,
and
Harris Trust and Savings Bank, Defendant.
 Nos. 87-1512, 87-1569.
 United States Court of Appeals, Federal Circuit.
 Sept. 9, 1988.
 
 Before FRIEDMAN and RICH, Circuit Judges, and BENNETT, Senior Circuit Judge.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The final order of the United States District Court for the Northern District of Illinois in Hemstreet v. Burroughs Corp., 666 F.Supp. 1096, 2 USPQ2d 1001, adhered to on reconsid., 6 USPQ2d 1971 (1987), granting summary judgment in favor of Burroughs Corporation and Harris Trust and Savings Bank that the Hemstreet patents in suit are unenforceable because Hemstreet obtained them through inequitable conduct before the United States Patent and Trademark Office (PTO), is reversed. Burroughs Corporation's cross-appeal is dismissed.
 
 OPINION
 
 2
 * The Hemstreet patents, Nos. 3,713,099 ('099 patent) and 3,713,100 ('100 patent), both of which cover a "Method and Apparatus For Identifying Letters, Characters, Symbols, and the Like," are directed to character recognition. This is the identification, by complex electronic procedures, of particular characters, such as letters or symbols. Cross-appellant Burroughs manufactures business equipment, and defendant Harris Trust and Savings Bank (Harris Trust) leased and used Burroughs character recognition equipment for sorting checks. In the present suit, Hemstreet alleges that all Burroughs character recognition products infringe at least one of the patents in suit.
 
 
 3
 After discovery, Burroughs and Harris Trust moved for summary judgment on two defenses they asserted: (1) that Hemstreet had engaged in inequitable conduct before the Patent Office in obtaining his patents, so that those patents are unenforceable, and (2) that there was no infringement. The district court held for the defendants on the inequitable conduct issue, found it unnecessary to reach the infringement issue, and dismissed the complaint.
 
 
 4
 The district court held that Hemstreet had engaged in inequitable conduct by (A) failing to cite to the Patent Office pages 271-72 of the text High-Speed Computing Devices (hereinafter "High-Speed text" or "High-Speed") and (B) failing to correct erroneous statements made to the PTO about how the device claimed in the Hillyer patent operated. The court further held that three other alleged instances of inequitable conduct upon which the defendants also relied involved disputed issues of material fact that precluded summary judgment.
 
 A. High-Speed Text
 
 5
 Pages 271-72 of the High-Speed text show a circuit known as, among other names, a "half-adder" or an "or-not-and" circuit. In 1952, in correspondence with his attorney, Williams, Hemstreet referred to the High-Speed text. Hemstreet cited the High-Speed text in the original application in connection with a section of the application dealing with "counters" but did not specifically cite pages 271-72.
 
 
 6
 Williams testified that he probably would have cited pages 271-72 of High-Speed to the examiner at the first interview because of his general practice of citing such evidence at that time. Williams never had an interview because Link Aviation, Hemstreet's employer, required Hemstreet to assign the patent to it. Thereafter, Link Aviation's own attorney, Stephens, prosecuted the patent application. Stephens, who had been a patent examiner, testified that High-Speed was a standard text on computer technology and a popular reference among the examiners. He stated that he "believed [in 1953, when Hemstreet filed his original patent application] that High Speed Computing Devices was a book which the patent examiner would be thoroughly familiar with." There also was testimony that half-adder circuits were well-known during the prosecution of the Hemstreet patent and that they were recognized prior art. Robinson, the examiner who ultimately allowed the Hemstreet patents to issue, testified that he was aware of half-adder circuits having been used before the Hemstreet applications were filed but that he was not aware of the particular circuit shown in the High-Speed text.
 
 
 7
 Two former patent examiners who had worked on the Hemstreet applications, Miller and Robinson, testified that the circuit shown on page 272 of High-Speed anticipated claims of the '100 patent and that, if this page had been called to their attention, they would not have allowed these claims.
 
 
 8
 The district court found there was clear and convincing evidence that pages 271-72 of High-Speed met the levels of materiality and intent required for a finding of inequitable conduct. American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1363, 220 USPQ 763, 773 (Fed.Cir.), cert. denied, 469 U.S. 821 (1984). It held that the High-Speed text satisfied the "but for" standard of materiality because the examiners testified they would not have allowed the claims had the text been cited. The district court further stated:
 
 
 9
 There is also clear and convincing evidence of the threshold intent required. It is undisputed that both plaintiff and his attorney knew of the High-Speed text. Plaintiff believed it to be highly material to certain aspects of his patent and consciously and deliberately incorporated techniques disclosed in the High-Speed text into his patent. He also doubted whether his claims bearing on the or-not-and circuit alone would be allowed because of the use of that technique in the computer field, and specifically referred to the High-Speed text as an example of such prior use. He explained all of this to his attorney, Williams. Plaintiff then failed to call the High-Speed text to the attention of the patent office, even though his patent application included several claims that would not have been allowed but for plaintiff's failure to disclose the High-Speed text. This constitutes clear and convincing evidence that plaintiff intended to deceive the patent office.
 
 
 10
 666 F.Supp. at 1104, 2 USPQ2d at 1006. The district court concluded that
 
 
 11
 it is clear that inequitable conduct occurred. The high "but for" standard of materiality is demonstrated by the testimony of Examiner Miller and Examiner Robinson. A high level of intent is demonstrated by the correspondence between plaintiff and his attorneys showing that he knew of the materiality of the High-Speed text, yet failed to call it to the attention of the patent office. This evidence demonstrates an intent to deceive. Under these circumstances the court is compelled to find that inequitable conduct occurred rendering the patents at issue unenforceable.
 
 
 12
 Id. at 1106, 2 USPQ2d at 1007 (emphasis in original) (citations omitted).
 
 
 13
 B. The Hillyer Patent also covers a character recognition device. During prosecution, Link's attorney Stephens described Hillyer as identifying characters based on "acceptance due to similarities" in contrast to Hemstreet, which he described as recognizing characters by "rejection due to differences." The experts disagreed, however, over the basis of Hillyer's operation. The court's expert, Professor Vacroux, noted that "even though the various experts agree on the way the systems described in the [Hillyer] patent function, they do not seem to concur on the underlying philosophy of operation."
 
 
 14
 Mr. Kayton, an attorney who worked on the Hemstreet application and who reported to Mr. Stephens, wrote "No! I.K." Next to the statement on the Hillyer patent that it "responds to similarities." The district court held:
 
 
 15
 Once again, the proof of threshold materiality is clear, convincing, and direct. Examiner Robinson testified that at the time he allowed the Hemstreet applications he was not aware that the Hillyer system worked on the basis of differences and had never been informed of that fact. He also testified that he was guided by the representations of plaintiff's attorneys and relied on those representations as to how the Hillyer systems function. He also testified that after reviewing the Hillyer patent in connection with this case he determined that the Hillyer systems work on the basis of rejection due to differences, that information as to the correct nature of the operation of the Hillyer systems was material to his handling of the Hemstreet applications and important to his decision to allow those applications. Finally, he testified that the Hillyer patent anticipated [the] '100 patent claims 22, 39 and 50-52 and [the] '099 patent claim 65 and that he would not have allowed these claims if he had been aware of the correct operation of the Hillyer systems. It is therefore clear that the misrepresentations made to the patent office regarding the operation of the Hillyer systems and the failure to correct those representations satisfy the subjective "but for" standard of materiality and the lower standards as well.
 
 
 16
 As to the issue of intent, it is clear that plaintiff's attorney made incorrect statements to the patent office regarding the Hillyer patent, that Kayton subsequently learned that these statements were incorrect, and that Kayton (and Stephens) continued to represent to the patent office that rejection due to difference was the "pith and essence" of the Hemstreet devices, without ever correcting the incorrect representations that had been made. This constitutes clear and convincing evidence of (at least) Kayton's intent to deceive.
 
 
 17
 Id. at 1110, 2 USPQ2d at 1010.
 
 II
 
 18
 In reviewing the district court's grant of summary judgment, all evidence, and inferences drawn therefrom, must be viewed in Hemstreet's favor. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)); Baker Oil Tools, Inc. v. Geo Vann, Inc., 828 F.2d 1558, 1560, 4 USPQ2d 1210, 1211 (Fed.Cir.1987). This court has stated that, when reviewing a summary judgment finding of inequitable conduct, "[i]f the facts of materiality or intent are reasonably disputed, the issue is not amenable to summary disposition." Baker Oil Tools, 828 F.2d at 1566, 4 USPQ2d at 1215 (citing KangaROOS U.S.A., Inc. v. Caldor, Inc., 778 F.2d 1571, 1577, 228 USPQ 32, 36 (Fed.Cir.1985)). Moreover, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. at 248.
 
 
 19
 The Supreme Court also stated in Anderson v. Liberty Lobby that "the inquiry involved in a ruling on a motion for summary judgment ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." 477 U.S. at 252. The evidentiary standard for inequitable conduct is clear, unequivocal and convincing proof, and the party asserting the defense bears a heavy burden of persuasion. Rohm & Haas Co. v. Crystal Chemical Co., 722 F.2d 1556, 1572, 220 USPQ 289, 302 (Fed.Cir.1983), cert. denied, 469 U.S. 851 (1984); Kansas Jack, Inc. v. Kuhn, 719 F.2d 1144, 1151, 219 USPQ 857, 861 (Fed.Cir.1983).
 
 
 20
 We conclude that the grant of summary judgment in this case was erroneous. The evidence presented disputed questions of material fact with respect to the two issues to be determined on the question of inequitable conduct: intent and materiality. Because Hemstreet filed his original application in 1953, the standard for determining the propriety of his conduct before the PTO was that in existence when the alleged inequitable conduct took place, not the present concept of inequitable conduct. Cf. In re Harita, 847 F.2d 801, 807, 6 USPQ2d 1930, 1934 (Fed.Cir.1988).
 
 
 21
 Hemstreet's reference to High-Speed in his application in another context and the testimony that High-Speed was believed to be well-known among examiners could lead a jury to infer a lack of intent to deceive. Resolving the materiality issue required determining the credibility of the examiners, which is for the jury to decide. With respect to Hillyer, even the experts disagreed whether it worked as Hemstreet alleged or as Burroughs contended.
 
 
 22
 The factual determinations the district court made in granting summary judgment on inequitable conduct all involved weighing and choosing between conflicting evidence and drawing inferences from that evidence. The evidence in this case could have permitted the jury to conclude that the defendants had not established inequitable conduct by the necessary clear, unequivocal and convincing proof. Here "the facts of materiality [and] intent are reasonably disputed." Baker Oil Tools, 828 F.2d at 1566, 4 USPQ2d at 1215. Viewing the evidence and drawing all inferences in Hemstreet's favor, as was required, summary judgment that Hemstreet engaged in inequitable conduct before the PTO was impermissible.
 
 III
 
 23
 Burroughs has filed a cross-appeal in which it argues that the district court improperly denied its motion for summary judgment on the three other grounds of inequitable conduct it asserted. Since the district court granted Burroughs' motion for summary judgment and dismissed the complaint, Burroughs was the prevailing party in the district court and therefore cannot cross-appeal the district court's summary judgment. Accordingly, we shall dismiss Burroughs' cross-appeal.
 
 
 24
 As an appellee, however, Burroughs may assert any grounds shown by the record as a basis for affirming the judgment of the district court in its favor. We therefore have considered the arguments Burroughs makes in its cross-appeal as alternative grounds for affirming the summary judgment.
 
 
 25
 The district court denied summary judgment on those other three points because it concluded there were disputed issues of material fact relating to those questions. We have no reason to disagree with that conclusion of the district court, and therefore uphold the denial of summary judgment on those issues.
 
 IV
 
 26
 Mr. Kayton has moved to file a brief amicus curiae. He alleges that the district court made erroneous factual findings with respect to his role in prosecuting the Hemstreet patent. Apparently he is asking us to reverse those findings or to indicate that they are erroneous.
 
 
 27
 In view of our disposition of this appeal, we find it unnecessary and therefore decline to consider that question; we therefore deny leave to file the amicus brief. If on remand the merits of the inequitable conduct defense are litigated, we presume that all the facts relating to Mr. Kayton's activities in connection with the prosecution of the Hemstreet patent application will be fully developed.